Richardson, et al. vs. Robinson, et al.

RICHARDSON, ET AL. vs. ROBINSON, ET AL.

When it is attempted to set up an equitable title against a legal title, accompanied with long continued possession, the equity must be clearly proven.

APPEAL from Howard Circuit Court.

LEONARD & CLARK, for Appellees.

In support of the decree of the circuit court, the counsel for the appellees will insist upon the following :

POINTS AND AUTHORITIES.

1. The defendants, and their ancestors, had the legal title twenty, and the posession thirty years, and they will not be disturbed by this court, unless the complainants establish a clear equity in themselves, to be clothed with the legal title. Bird, et al. vs. Ward & Cravens, 1 Mo. R. 281, new publication.

2. Richardson, the ancestor, had a vendible interest in the land in 1815, under the pre-emption law of 1814, and the proof establishes that he sold this interest in the former year to Christopher Burckheartt, and thereby extinguished all equitable right in himself, and his heirs, to the land in question. Bird, et al. vs. Ward and Cravens, 1 Mo. R. 281, re-publication ; pre-emption law of 5th Feb., 1813; 1 U. S. land laws 225; pre-emption law of 12th April, 1814 ; 1 U. S. land laws 244, sec. 5.

3. The copies of deeds from the recorder's office of Howard county, were competent evidence in the cause, and rightly received by the Court. Acts of 1838-9, page 42, title evidence, sections 10 and 11. Moss vs. Anderson, 7 Mo. Rep. 338.

4. If this be otherwise, and these deeds are struck out of the proof, yet a parol sale of land in 1815 was valid, and the parol proof establishes the fact of the sale to Burckheartt. Territorial acts, title frauds and perjuries,·p. 439; title laws, p. 436.

NAPTON, J., delivered the opinion of the court.

This was a bill in chancery, brought by Christopher Richardson and James Barton, (by his next friend,) heirs at law of James Richardson, deceased, to compel the conveyance of a legal title to a quarter section of land from the heirs of Nicholas S. Burckheartt, deceased.

51

The bill alleges that James Richardson, the ancestor, cultivated the land in controversy in 1811 and 1812, and that the pre-emption right, under the act of congress of April 12th, 1814, was granted to the legal representatives of said Richardson, who were both infants, and one of them a married woman; that the purchase money was paid by Christopher Burckheartt, deceased, and by mistake or fraud, the land was patented to Nicholas S. Burckheartt, deceased, as assignee, &c.

The bill charges that the complainants never did assign their interest to N. S. Burckheartt, or any other person; that one of the complainants, (Christopher Richardson,) and the mother of the other, Elizabeth Barton, (formerly Elizabeth Richardson,) were infants at the time the pre-emption was allowed; that the application of the said N. S. Burckheartt, was pretended to be for their benefit, but that a patent for the land was fraudulently procured to himself, and that he took possession and held it until his death.

The bill alleges that the purchase money was intended by Christopher Burckheartt, deceased, as a donation to the heirs of said James Richardson, and prays for a decree of title.

The answers of the several defendants, who are heirs of N. S. Burckheartt, set up, that N. S. Burckheartt has been in possession of the land since 1815, claiming it as his own, and deny that the purchase money was paid by C. Burckheartt, the father of the said Nicholas S., or that it was a donation to the heirs of James Richardson. The defendants aver, that the land was purchased by Christopher Burckheartt, before the pre-emption right was allowed, and by him sold to N. S. Burckheartt for valuable consideration; that C. Burckheartt took possession immediately after his said purchase, and that afterwards N. S. Burckheartt took possession, and continued in possession until his death; that neither said Richardson nor his heirs denied the title of said N. S. Burckheartt, in his life time, and that said Nicholas paid the purchase money to the United States out of his own money, and for his own use and benefit.

The defendants insist on adverse possession since 1815, and rely upon the record of the deeds from James Richardson to C. Burckheartt, and from C. Burckheartt to N. S. Burckheartt.

The evidence on the part of the complainants established, that their ancestor, James Richardson, moved to the Boons' Lick in Howard co., in the year 1811; that he cultivated a small portion of ground, and established salt works; that in 1812 he was joined in the salt making business by one Alcorn, but their partnership was discontinued in the same year; that about this time Christopher Burckheartt, whose daugh-

ter said Richardson had married, moved up to the "lick," and with his family occupied the same cabins with Richardson, and carried on the salt making together, until the incursions of the Indians drove them into the forts; that they returned in 1815, that in the fall of that year Richardson, with a view to benefit his health, left for the lower country, and died without ever returning.

Several witnesses testify, that Richardson declared he had sold his land to Christopher Burckheartt, and also that C. Burckheartt said he had bought it, and assumed the payment of some of Richardson's debts.

Whilst Richardson was in possession, and previous to the time he was joined by C. Burckheartt, Nicholas S. Burckheartt came out to this country from Kentucky, and worked at the lick, with his brother-in-law, as an ordinary hand. It also appears, that in 1815, and perhaps for some years thereafter, said N. S. Burckheartt was not the ostensible owner of any considerable property, but was sheriff of Howard county, and held some other lucrative offices.

It was also proved that Nicholas S. Burckheartt lived at the lick, from 1815 until he married, and that he claimed the lick as his property, though his father and mother continued to reside thereon for several years; and up to the time of the bringing of this suit, his mother still lived on it. The money to enter the land, at least a portion of it, was advanced by Christopher Burckheartt, the father. The last payment was made by N. S. Burckheartt, and the father Christopher Burckheartt, who was present when the payment was made, was heard to say that the land belonged to said Nicholas S.

Drake, a witness for complainants, testified that Christopher Burckheartt had bought of Richardson, and that C. Burckheartt had assigned all his interest to Nicholas, on condition that he, Nicholas, should pay to Richardson's heirs, whenever they became of age, whatever the land was worth. In 1825, Christopher Burckheartt and Nicholas S. came to witness, and told over their contract, which was as above; that Nicholas S. Burckheartt often told witness that he was indebted to Christopher Richardson for the land, and a few weeks before his death, stated that all his land business was settled, if Christopher Richardson's land was only paid for; that he had not hitherto paid, because he was afraid Christopher Richardson would ask too much; that witness had *signed* C. Richardson's right in 1825, as guardian, at the request of Nicholas S. Burckheartt; that the estate of Barton, husband of Elizabeth Richardson, and father of the complainant James Barton, was in debt to Nicholas S. Burckheartt; that witness had *signed away* the

right of said Christopher Richardson, because of the conveyance from Christopher Burckheartt to said Nicholas.

The transfer from Roger Barton and Elizabeth Barton, was acknowledged before a justice of the peace, on the 17th May, 1819; that from Christopher Burckheartt and Christopher Richardson, (by his guardian D. R. Drake,) was made on the 8th April, 1825, and acknowledged before John Miller, register of the land office.

The defendants gave evidence of repeated acknowledgments made by Christopher Burckheartt of the ownership of his son, Nicholas S., and acts of ownership on the part of said Nicholas. The defendants also offered in evidence, the record copy of a conveyance from James Richardson to Christopher Burckheartt, dated 13th April, 1815, and an assignment of the same from C. Burckheartt to N. S. Burckheartt, dated 25th July, 1815, acknowledged and recorded on 9th Feb'y, 1820, before Gray Bynum, the clerk of Howard county. Before offering it as evidence, the defendants proved that diligent search had been made for this deed, but it could not be found; they also introduced two subscribing witnesses, but neither of them had any recollection of the matter. The court admitted the deed in evidence.

Upon the final hearing, the court dismissed the bill, and from this decree the complainants appeal.

In this case an equitable title to land is set up in opposition to a legal title accompanied by long continued possession. The principles of natural equity coincide with the rules by which courts of chancery would be governed in such a case, in requiring the equitable title to be satisfactorily established before the application can be sustained.

Much of the evidence in this cause was entirely foreign to the merits; we allude to so much of it as tended to show an equitable title in the heirs of Christopher Burckheartt.

The equitable title of Richardson's heirs, as it appears in evidence, is supported principally by the attempted transfers of the title in 1819, and in 1825, the invalidity of which is insisted on, and by the deposition of David R. Drake.

To rebut this equity, the defendants rely upon the conveyance from James Richardson to Christopher Burckheartt, in 1815; and secondly, upon the proof of a parol sale, if that deed be held inadmissible.

Whether a party who insists upon a conveyance by deed, can be permitted after failing to prove his deed, to show a parol sale, in cases where a transfer could legally be made, either by deed or by parol, is a question which we do not think necessary to be decided. MaFaden v. Rippey, 8 Mo. Rep. 738. If the record of the deed from Richard-

son to Burckheartt was properly admitted, it certainly goes very far to disprove the existence of the equitable title which the bill sets up in the heirs of Richardson. The admissibility of this deed is, therefore, considered the most important point in the case.

By the act of Dec. 23d, 1815, the clerks of the circuit courts were authorized to take the acknowledgment and proof of deeds, and by the act of Feb. 1, 1817, all deeds for land, proven and acknowledged before any competent authority, were required to be recorded within three months from the date thereof, in order to be good against a subsequent purchaser. The conveyance from James Richardson to Christopher Burckheartt, was executed in April, 1815, and recorded in Feb. 1820, the clerk of the circuit court of Howard county having taken the acknowledgment in due form of law.

The 10th section of the act of February 1, 1839, permits a deed, acknowledged, proved and recorded according to law, (that is, the law in force at the time of its acknowledgment,) though it may not have been recorded within one year ftom its date, or twenty years before it is offered to be read in evidence upon *proof of such facts and circumstances* as, together with the certificate of acknowledgment and proof, will satisfy the court that the person who executed the instrument, is the person therein named as grantor. The next section provides, that in cases where the original is lost, the record copy may be received in evidence, upon *the same proof* being made as is mentioned in the preceding section to authorize the reading of the original.

The copy of the deed from Richardson to C. Burckheartt, comes within the foregoing provision, if the facts and circumstances proved on the trial were sufficient to warrant the court in believing that James Richardson. who is named as the grantor, was the identical person who executed this deed. The subscribing witnesses were called, but as might have been expected, they had no recollection of having ever witnessed the deed. The deed had been executed more than twenty-five years before the trial, and how few would recollect an occurrence of such a character at such a distance of time. The clerk who took the acknowledgment nearly five years later, did not remember the part he had taken in the transaction. But it was proved that Richardson, shortly after the date of this deed, left the land, and that Burckheartt took sole and exclusive possession, and claimed that he had purchased it. It was also proved by one witness that previous to Richardson's departure for the lower country, he told witnesss that he had sold out to Burckheartt, and being indebted to witness he was assured that Burckheartt would pay him, and that Burckheartt did accordingly as-

sume to pay the debt. There were facts and circumstances which, in our estimation, warranted the court in considering the identity of James Richardson with the grantor in this deed as sufficiently proved to let the copy in evidence.

The testimony of the witness, Drake, is not so easily reconciled with the appearance which these conveyances give to this transaction. This witness, as guardian of Christoper Richardson, had conveyed, or attempted to convey, all the right of said Richardson to the land in controversy in 1825; this he did as he alleges, because of the conveyance from Christopher Burckeartt to Nicholas S. Burckheartt. It is to be remarked that all the conveyances, or attempted conveyances, either by James Richardson, the ancestor, or by his children, are *absolute* on their face. Admitting that these attempted transfers from Christopher Richardson by his guardian, and from Elizabeth Barton, were absolutely void, yet it is singular that the witness, Drake, should have made himself a party to such a transfer, absolute on its face, with a knowledge that the land had been originally conveyed to Christopher Burckheartt, and by him to his son Nicholas, *in trust* for the heirs of J. Richardson. Conversations such as the witness testifies to, with Nicholas S. Burckheartt before his decease, may be so easily misunderstood, that we do not think that they could, under any circumstances, outweigh the recorded deeds, the oral testimony of other witnesses, and an undisturbed possession of thirty years. It may be, that Nicholas S. Burckheartt considered himself under some obligation, through feelings of kindness and relationship (for the complainants were his sister's children) to make them some compensation for their father's land, which had doubtless been purchased at a small price, and had perhaps very much appreciated in value. Or it may be that a doubtful title might induce him to make propositions for compromising the claims of Christopher Richardson. Such propositions cannot be regarded as an acknowledgment of Richardson's title.

This last idea appears to be confirmed by the testimony of Elizabeth Burckheartt, the mother of Nicholas, and grandmother of the complainant, Christopher Richardson. She states that she heard Nicholas S. Burckheartt say, one or two years before his death, that he wished he had purchased Richardson's *claim* to this land, and asked her at another time, if she knew how much said Christopher would take for his right, &c.

Upon the whole case, we are satisfied that the circuit court properly dismissed the bill, and the decree is therefore affirmed.