————o————

JOHN HAMBRIGHT, Defendant in Error. *vs.* CHARLES G. BROCKMAN, *et al.*, Plaintiffs in Error.

1. *Deeds of trust—Sale at "court house door," what amounts to, in law.*—The terms of a deed of trust requiring sale to be made "at the court house door of Jackson county," are sufficiently complied with where the property is sold at the door of a building appropriated by special order of the County Court, for court purposes, pending repairs in the court house proper.

2. *Land and land titles—Declarations touching, when competent, when not.*—Declarations touching the title to land, when in the nature of admissions, may be competent; but otherwise when used to establish the title of the witness, or to impair the title of others who are not shown to be present or in complicity.

3. *Equity—Special issues—Verdict of jury, etc.*—In equity proceedings, the verdict of a jury on special issues submitted to them, is not conclusive in the Circuit Court.

### Error to Jackson Circuit Court.

*J. B. Hovey*, for Plaintiff in Error, cited in argument : 1 Greenl. Ev., §§ 99–100 ; Wagn. Stat., 1372, § 1 ; Bac. Abr. Title Statutes, let. F.

*J. K. Sheley*, for Defendant in Error, cited in argument : Kane vs. McCown, 55 Mo., 198.

NAPTON, Judge, delivered the opinion of the court.

This proceeding was instituted by Hambright, as a purchaser under a sale made by the trustee in a deed conveying land to secure said Hambright, and the object of the petition was to establish the equitable title of the grantor in the deed of trust against the defendants claiming to be tenants in common with him or his wife under the legal title ; and to have the whole legal title transferred to the plaintiff.

The facts not controverted, were these : In 1858, at a sale of some land in Jackson county, belonging to the estate of one Colcord, by the administrator, Dr. Waldo, Wm. Cogswell became the purchaser ; but before the administrator made him a deed, Cogswell died, leaving three daughters, one the wife of the defendant, Matthews, and the two others married, and made defendants in this case. In 1869, eleven years after the sale Waldo made a deed for this land to these three daughters of Cogswell, he having been advised to do so by his law adviser. It would seem from this, that the purchase money had not been fully paid till this time. About the same time, in 1869, Matthews and wife borrowed of plaintiff, Hambright, about $600, and made a deed of trust to S. H. Woodson, conveying this same land to Woodson, as trustee, to secure the payment of this sum. This deed does not anywhere appear in the record ; but it is agreed and so stated in the bill of exceptions, that by its terms Woodson was authorized to sell this land in default of payment, and after a specified notice,

"at the court house door in the city of Independence." It seems, that when the time for the sale under the advertisement arrived, and for some time prior thereto, the court house at Independence was undergoing repairs, and had in fact been partially taken down, and the courts were held in an upper room of a building on the public square, over a bank, which had been appropriated by an order of the County Court to the transaction of public business during the reconstruction of the court house.

About these facts there was no controversy. But the petition asserted that Cogswell's purchase was merely nominal; that Waldo made the sale to him, at his instance, but that his son-in-law, Matthews, was the real purchaser, who, being in failing circumstances and overwhelmed with debt, procured his father-in-law, Cogswell, to buy the land for him, and advanced the money to pay for it, and that this was done to protect the property from Matthew's creditors. The petition therefore asks, that Matthews be decreed the real owner, and that the deed to Cogswell's heirs be considered as for the benefit and sole benefit of Matthews, and that the conveyance of Matthews to Woodson for the benefit of plaintiff, be regarded as the conveyance of the whole title, and that the sale of Woodson be regarded as conveying the whole title to plaintiff, who was the purchaser at that sale.

The answer of Matthews denies all this, and so does that of his co-defendant.

By agreement, the following issues were submitted to a jury; 1st. At a sale of the land in controversy made by Waldo, administrator of Colcord, did J. P. Matthews in fact become the purchaser, and furnish the money to pay for the same? 2d. Did J. P. Matthews and William Cogswell, for the purpose of defrauding the creditors of Matthews, secure Waldo as such administrator to report Cogswell as the purchaser, and to make the deed accordingly? 3d. Was the sale of the lands in controversy, and at which Hambright became the purchaser, made by Woodson as trustee, made at the court house door in the county of Jackson?

On the trial of these issues Waldo testified, that he sold the land to Cogswell and made a deed to Cogswell's heirs; that Matthews made several payments—and Cogswell also—but Cogswell represented himself as agent for Matthews in making payments; but the witness never understood from either on whose account these payments were made.

Hambright, the plaintiff, testified that when Matthews wanted to borrow the money mentioned in the deed of trust to him, he said to him that he had used Cogswell's name in the purchase of the land, because he (Matthews) was embarrassed. This testimony was objected to, on the ground that Matthews' declarations were incompetent to affect the title of Cogswell but the objection was overruled and an exception taken. This witness further stated, that at the time Matthews was negotiating for the loan, he said that the land in controversy was his; that it was bought in the name of Cogswell, because he, Matthews, was greatly embarrassed, and the land so bought to save it; that he (Matthews) paid all the money for it, and that the money he wanted of plaintiff was to pay off the balance of the purchase money. Exceptions were taken to this evidence.

Woodson, the trustee, stated, that on the day of the sale as advertised by him, he went to the north door or entrance of the court house and proclaimed, that as the court house was pulled down to its first story, he would sell at the front entrance to the place where the courts were then held, which was at " Bank Hall," and on the right of the court house, and there a court was then in session; that a sale was then made, and that an order of the County Court was produced directing the building designated as " Bank Hall " to be used as a court house.

In defense, Matthews then testified that he requested his father-in-law, Cogswell, to buy the land; that Cogswell replied if witness would furnish the money to assist in paying for it, he would do so ; that he, witness, was then largely in debt to Cogswell, but the latter wanted this strip of land to round off a tract which Cogswell had given to his wife.

The court on this evidence instructed the jury: 1. That in order to constitute Matthews the purchaser in fact, it was not necessary for him to be present and contract for the same; but if the land was purchased by Cogswell for and at his request, and paid for by Matthews, then he was in law the purchaser of the same. 2. That if Matthews was in embarrassed circumstances at the time of the sale of the land by Waldo, and it was purchased in the name of Cogswell for the purpose of aiding Matthews in keeping it from the creditors of Matthews, pursuant to an agreement or understanding between Matthews and Cogswell, then they will find the second issue in the affirmative. 3. If the jury find from the evidence that the hall of the bank was designated as the court house or place of holding court, and that the steps were the only public way of reaching said hall, and the sale took place at the foot of said stairway, then the sale was made at the court house door of Jackson county, and the answer to the third interrogatory must be—yes!

The court also instructed the jury: "Before you can find the second interrogatory in the affirmative. you must find from the evidence that said Matthews and Cogswell caused said Waldo, administrator, to report said Cogswell as the purchaser, and to make the deed accordingly with the intent or purpose to defraud the creditors of said Matthews, and such must have been the purpose of both said Matthews and said Cogswell. The jury are further instructed that such fraudulent purpose cannot be presumed, but must be proved; but the jury in determining the question of intent, should take into consideration all the facts and circumstances proven, and such purposes may be proven by circumstances, if sufficient to satisfy the jury." The jury found the issues for the plaintiff, and upon this verdict the court entered a decree.

This decree is objected to here mainly on two grounds. The first is, that the sale at the door of the bank building occupied as a court house, was not such a sale as the deed required. The deed of trust required a sale "at the court house door of Jackson county," in Independence. The sale

was made at the door of a building then occupied as a court house and appropriated by special order of the County Court to the holding of courts; the building usually known and occupied as such having been partially taken down and then in a state of repair or reconstruction.

The object of such deeds, as the object of our law on the subject of execution sales, is to secure a sale at a public place, and when a court house is mentioned, it is obviously designed to designate the building where courts are held, and where the people attending such courts are supposed to congregate. If the court house, established at the time the deed is made, is burned down or in such a dilapidated condition that no court is held there, the object of publicity would not be attained by selling at the deserted spot where such building had stood. In this case the sale was made at the door of the building temporarily used as a court house, during the sessions of the court therein, and this holding to all intents and purposes constituted the building a court house and the court house of Jackson county at that time.

The second and only other point made, is, that the testimony of Hambright in regard to Matthew's admissions or declarations to him, when he proposed to borrow the money secured in the deed of trust were inadmissible; and upon this point we agree with the plaintiffs in error. Matthews could not make declarations propping up his title, nor could he confess away the rights of others, his co-defendants. Any admissions of his which would have the effect to cut down his title or to destroy it, would have been legal; but the declarations in question were to the effect of destroying the title of Cogswell, who was dead, and of Cogswell's heirs, and to admit the complicity of Cogswell in a concerted fraud upon Matthews' creditors. It does not appear who was in possession of the land at the time these declarations were made. So far as these statements tended to prove fraudulent designs on the part of Matthews, they might have been admitted; but such confessions could not affect the motives or title of Cogswell, or of those who inherited from him. They were

not present or in any way implicated in such admissions, and the effect of them was to establish Matthews' equitable title, contrary to the effect of the deeds.

This point was so decided in Turner vs. Belden, 9 Mo., 803; Foster & Fowler vs. Wallace, 2 Mo., 231; Foster vs. Nowlin, 4 Mo., 24; Wilson vs. Owen's Adm'r, 5 Mo., 40; Nolley vs. Callaway Co., 11 Mo., 467), and I am aware of no case in which the admissions of a party are allowed to affect others who may be co-defendants, unless some complicity is first established from evidence *aliunde.*

When the witness, Hambright was examined, who testified to these declarations, no other witness had been examined except Waldo, the administrator, who merely testified to the fact that the purchase money was mostly, or perhaps entirely, paid by Matthews. These payments were, however, mostly after the death of Cogswell, nor did this witness understand from either Cogswell or Matthews, who was understood to be the real purchaser.

However, notwithstanding the admission of incompetent evidence on a jury trial—which was not conclusive on the Circuit Court, nor on this court—if it could be seen from other testimony that the decree was right, we should have no hesitation in affirming it. But the only witness besides Waldo and Hambright was the defendant, Matthews, and Matthews' testimony may well lead to the conclusion that Cogswell was the *bona fide* purchaser, although the purchase money was mostly or entirely advanced by Matthews.

It seems from the testimony that Matthews was largely indebted to Cogswell, and that Cogswell only agreed to make this purchase on the understanding that Matthews' would advance or pay the purchase money; and it is probable that Cogswell designed to convey the land ultimately to the wife of Matthews, who was his daughter, and to whom he had previously conveyed a contiguous tract. This design was never carried into effect, by reason of the death of Cogswell, and his title consequently descended to his three daughters, of whom the wife of Matthews was one. But this evidence

of Matthews would show title in Cogswell—and a *bona fide* title—with a mere unexecuted intention up to his death. It would show, that though Matthews advanced the purchase money, it was only because that and more was due to Cogswell, and such an arrangement would be no fraud on the creditors of Matthews, of whom Cogswell was one.

In short, there is nothing to show any complicity of Cogswell with Matthews in buying this land, with a view to hinder or delay the creditors of Matthews, and such complicity the jury were instructed to find by the court, before they could find a verdict for plaintiff.

The instructions of the court were correct—indeed no objection is made to them—but as the court admitted evidence on the jury trial which we think incompetent, and it does not appear from the evidence that Cogswell participated in any design to defraud Matthew's creditors, the judgment must be reversed and the cause remanded.   The other judges concur, except Judge Vories who is absent.