Stewart v. Brown.

STEWART *et al.*, *Appellants*, v. BROWN *et al.*

In Banc, November 14, 1892.

1. **Deed of Trust:** PLACE OF SALE. The place of sale under a deed of trust given to secure a debt is governed by the terms of such deed.

2. ———: ———: COURTHOUSE, DESTRUCTION OF. Where the deed of trust directs a sale "at the east courthouse door," and the courthouse is afterwards abandoned or destroyed, the sale may be made at the courthouse in use at the time of the sale.

3. ———: ———: ———: REDEMPTION. Where after such abandonment of the use of the courthouse because of its partial destruction by fire, the circuit court is held in another building, and the county and probate courts in still a different one, and the trustee sells under a notice of sale to be made "at the front door of the courthouse," the heirs of the grantor will be permitted to redeem on showing that two or more places were designated and known as the courthouse.

4. ——: ——: ——: ——.    Where, however, it appears that the notice of sale designated. the courthouse at which'it was to take place, and that no injury probably resulted from the method of conducting the sale, it will be upheld.

5. **Public Holiday**: SALE UNDER DEED OF TRUST.   A sale under a deed of trust may be legally made on the twenty-second of February, although such day is declared a public holiday by statute. (Revised Statutes, 1879, sec. 551.)

*Appeal from Buchanan Circuit Court.*

REVERSED AND REMANDED.

*S. S. Brown* for appellants.

(1)   The sale by the trustee was void.   The power under which he acted required the sale to be made at the east door of the courthouse.   It was not sold at that place nor at the east door of any building at which court was being held at the time.   "A power of sale, like all other powers, can be exercised only in the mode and upon the exact conditions, terms and occasions prescribed in the instrument of trust.   2 Perry on Trusts, sec. 783.   The place provided for the sale in the deed of trust was one in which all the courts of the county were held.   This was abandoned, and two buildings at a distance from each other were provided for holding courts.   The advertisement stated that the sale would be held at the front door of the courthouse.   There was nothing in this to indicate at which house the sale was to be made.   *Goff v. Roberts*, 72 Mo. 570.   (2) The twenty-second day of February is made by statute a public holiday.   Revised Statutes, 1889, sec. 737. And no writ of any court could be served on that day. Sec. 8952.   No judicial act can be performed on that day.   *Lampe v. Manning*, 38 Wis. 673.   (3)   The question in this case is not necessarily whether the sale was void or not.   If the time, place or circumstances

under which it was advertised to take place were such as to excite doubt in the mind of the ordinary bidder as to the title which would result, the trustee committed a breach of his duty, and, if either of the parties were injured thereby, the sale ought to be set aside, and the mortgagor permitted to redeem.

*M. A. Reed* and *Lancaster, Hall & Pike* for respondents.

(1) The sale was properly made at the place where it occurred. *Hambright v. Brockman,* 59 Mo. 56; *Napton v. Hurt,* 70 Mo. 497; 2 Jones on Mortgages, secs. 1848, 1849; *Alden v. Goldie,* 82 Ill. 581; *Wilhelm v. Schmidt,* 84 Ill. 183; *Williams v. Powers,* 48 Tex. 141. (2) The sale was not rendered illegal because it occurred on the twenty-second of February. The laws of Missouri do not place holidays on the same footing as Sundays. Revised Statutes, 1879, secs. 551, 1054, 1578. The Missouri statute stops all business on Sundays. It does not stop any business on any other day. These views are fully sustained by the following cases: *Richardson v. Goddard,* 23 How. 28; *Ass'n v. Miller,* 2 S. W. Rep. 900; 2 Jones on Mortgages, sec. 1847; *Sayles v. Smith,* 12 Wend. 57; *Westgate v. Handlin,* 7 How. Pr. 372; *Russ v. Gilbert,* 19 Fla. 54; *Dunlap v. State,* 9 Tex. App. 35; *Pender v. State,* 12 Tex. App. 496; *McVerry v. Boyd,* 57 Cal. 406; *Bear v. Youngman,* 19 Mo. App. 41.

Thomas, J.—Black, J., in division number 1, made the following statement which we adopt as correct:

"This case is before us to review the action of the circuit court in sustaining a demurrer to the petition.

"On the twenty-eighth of May, 1883, George B. Stewart conveyed four lots to a trustee to secure his note for $1,600 payable to John C. Brown in one year after the date thereof. Stewart died in April, 1885, and the trustee sold the property on the twenty-second day of February, 1886, and Brown became the purchaser at the price of $1,985.

"This is a suit by the heirs of Stewart, some of whom are minors, to redeem the property.

"According to the petition the deed of trust provided that, if Stewart should fail to pay the note at maturity, 'the trustee, at the request of the legal holder of said note, should proceed to sell said property, or any part thereof, at public vendue to the highest bidder, at the east courthouse door in the city of St. Joseph, Buchanan county, Missouri, first giving thirty days' public notice of the time, terms and place of sale, and of the property to be sold, by advertisement in some newspaper printed and published in the county of Buchanan.'

"At the date of the deed of trust the courthouse was situated where it stood when this suit was commenced in 1887, namely, between Fourth and Fifth streets north of Jule street, and the east door fronted on Fifth street. In April, 1885, the courthouse was partially destroyed by fire, and at the date of the trustee's sale the circuit court was held on the third floor of a building situate on the northwest corner of Sixth and Francis streets, and the county and probate courts were held in a building situate on the northeast corner of Second and St. Charles streets. These buildings were not near to each other, nor were they near to the partially destroyed courthouse. It does not appear where the various county officers had their offices.

"The trustee gave notice that he would sell the property 'at the front door of the courthouse in the city of St. Joseph,' and he sold the same 'at the front or north door that led upstairs to the part of the building occupied by the circuit court, when in session, on the corner of Sixth and St. Francis streets.' The circuit court was not in session on the day of sale. It is alleged that persons who would have bid for the property, had it been sold at the proper time and place, refused to attend the sale because of the doubt entertained of its legality, and that the property sold for less than half of its value."

I. BLACK, J., in an opinion filed by him in division number 1, said: "The place where these sales under deeds of trust given to secure debts must be made depends upon the terms of the deed of trust. Such sales may be made at any place agreed upon by the parties; nor is it necessary that they should be made during the session of a court, as is the case in sales under executions. The place of sale, like the power of sale itself, is a matter of contract, and it follows that in determining the place of sale we must look to the intention of the parties as expressed in the deed of trust. It is to the intention thus expressed that the purchaser must look; for the trustee has no right to deviate from the expressed terms of sale, and if he fails to make the sale at the designated place it will not cut off the equity of redemption."

This is conceded to be the law, and, hence, the only question for us to decide is what contract the parties made as to the place of sale of the property under the deed of trust. Plaintiffs contend that by designating a particular door of the courthouse the parties intended that the sale should take place at that particular door of the *then* existing courthouse; while on the other hand defendants claim that the parties intended that

the sale should take place at the door of the courthouse that would be in existence at the time of the sale.

In *Kane v. McCown*, 55 Mo. 181, it was held by this court that, when in consequence of the fact, that a circuit courthouse was occupied by United States troops, a neighboring church at the same county seat was used as a courthouse, a judicial sale at the latter place would not be thereby rendered void, and that the obvious meaning of the execution law is to require judicial sales to be made at the door of the building occupied and used as a courthouse. In *Hambright v. Brockman*, 59 Mo. 52, it was held that the terms of the deed of trust, calling for a sale "at the courthouse door," were sufficiently complied with when the property was sold at the door of the building appropriated by special order of the county court for court purposes, pending repairs in the courthouse proper. In *Napton v. Hurt*, 70 Mo. 497, it appeared that the deed of trust called for a sale at the *west* door of the courthouse, but after the execution of the deed of trust a courthouse having no west door was located at another point, and this court ruled that the trustee could rightfully make the sale at *the door* of the new courthouse, basing the decision on the principle announced in *Hambright v. Brockman, supra.*

We do not deem ourselves called upon to examine the reasons on which that decision rests. It was announced in 1879, and has become a rule of property in this state, and to subvert it now would unsettle many titles, in all probability, and do incalculable mischief, and "it is a sacred duty in a court to adhere to decisions which have become a rule of property, unless there are the most convincing and overwhelming reasons for overruling them." Wells on Res Adjudicata & Stare Decisis, sec. 594; *Reed v. Ownby*, 44 Mo. 204. "But there are some questions," says the

supreme court of Indiana in *Rockhill v. Nelson*, 24 Ind. 424, "in the law, the final settlement of which is vastly more important than how they are settled; and among these are rules of property, long recognized and acted upon, and under which rights have vested. * * * We cannot change a decision without producing confusion in titles, as the ruling would necessarily relate back to the time the law came in force."

The deed of trust in the case at bar was executed in 1883, and it is to be construed as if it contained the proviso that, in case the *then* courthouse should be abandoned as a courthouse or destroyed, the sale by the trustee might be made at the door of the courthouse existing at the time of the sale, for that was the law at that time, as construed by this court, and the parties must be held to have contracted with full knowledge of it. We concede that it is the duty of the court to overrule a former decision in a proper case, but, "unless the evil to be apprehended from adhering to a decision or a series of decisions, is manifestly greater than that which might proceed from a departure, no change should ever be made. This ought especially to be the inflexible rule as to all questions likely to arise in regard to the purchase or sale of real estate." Wells on Res Adjudicata & Stare Decisis, sec. 594.

No evil, in our view, either great or small, can proceed from a sale of land under powers contained in mortgages at the courthouse door, wherever that may be, provided the notice specifically designates the place of sale. Courthouses are places of public resort, and there are many reasons why auction sales should occur there. Take the case at bar as an illustration. It would have been manifestly more appropriate to have sold the property at the door of the building in which the circuit court was held, than to have sold it at the

east door of a building once used as a courthouse, but then partially destroyed by fire and utterly abandoned as a courthouse. The former was a public resort where such sales usually occur, while the latter was not. Hence, we find no reason to depart from the rule laid down in the *Napton-Hurt case*, but every consideration impels us to adhere to it.

But that rule is fortified by the adjudications in other states.

Before referring, however, to those adjudications we will state precisely the grounds on which the opposing contentions rest.

As the place of sale in mortgages with power of sale is fixed in the contract of the parties, and the sale must be made at the place thus fixed, it is claimed by plaintiffs that by the designation of a particular door of the courthouse at which the sale should be made, the parties had in mind the particular courthouse *then existing*, and they located the place as specifically as if they had mentioned the particular block of ground, and intended the sale to occur there and nowhere else, without regard to whether the courthouse remained there or not; while on the other hand it is insisted that the rule in the *Napton-Hurt case* is based upon the theory that less importance should be given the designation of the particular door, and the word "courthouse" should be given more prominence and made the controlling feature, and that the parties intended that the sale should occur at the door of the courthouse, without regard to the change in location, and without regard to whether the new courthouse had a door corresponding to the particular door mentioned or not. The latter view is sustained by the cases of *Alden v. Golding*, 82 Ill. 581; *Wilhelm v. Schmidt*, 84 Ill. 183; *Williams v. Pouns*, 48 Tex. 141, and *Hickey v. Behrens*, 75 Tex. 488.

In the two Illinois cases it was held that where the deed of trust provided for the sale of property "at the north door of the courthouse in Chicago, these words were not restrictive to the site of the courthouse in existence at the date of the instrument, but in case of its destruction by fire the sale might be made at the north door of the building then in use for a courthouse, We do not think the fact, appearing in these cases, that the new courthouse had a door corresponding as to the points of the compass with the north door of the old courthouse, weakens the force of the principle upon which the rule in *Napton v. Hurt* rests.    If plaintiffs' contention be correct that the designation of a particular door of a courthouse fixes that door of the courthouse *then in existence* as the place, as specifically as if the block had been mentioned, then no sale could be made at any other point than the one named, and these cases held that the sale need not occur at *that* point, but may be made at *another* point.

In *Wilhelm v. Pouns, supra,* the supreme court of Texas ruled that a trust deed requiring a sale to be made at the courthouse of the county is properly executed by a sale at the courthouse of a *newly organized* county which includes the land sold.    This case we regard as directly in point, for the reason that it is scarcely probable that the parties contemplated the creation of a new county, but the court construed the language used to mean the courthouse of the county in which the land lay, in existence at the time of the sale.    In *Hickey v. Behrens, supra,* it appeared that the deed of trust required the sale to be made "at the usual and customary place of making such sales, at the *south* door of the courthouse." The sale was not made at the *east* door, which was the usual place of making such sales.    The court held this deviation from the terms of the power immaterial, no injury having been shown.

II.   Although we hold that the trustee was not required to make the sale at the east door of the courthouse in existence at the date of the trust deed; yet we think the allegations of the petition entitle the plaintiffs to the relief they seek, and, hence, the court erred in sustaining the demurrer.

These allegations show that at least *two* buildings in the city of St. Joseph at the time of the sale might have very properly come under the designation "the courthouse," and the trustee gave notice that he would sell the property "at the front door of the courthouse in the city of St. Joseph." This did not definitely describe the place of sale under the facts disclosed in the petition. Sales, under powers in mortgages, are a harsh mode of foreclosing the equity of redemption, and while these powers should not be so strictly construed as to destroy them and thus render the security intended valueless, still the courts should scrutinize them with great care, and refuse to sustain sales made under them unless they are characterized by all fairness, regularity and scrupulous integrity.

Whether the notice of sale is sufficiently definite as to *time* and *place* of sale is largely a question of fact, to be determined by all the conditions under which it is given and the results of the sale. If upon trial of this case it should appear that there was at the time of the sale but one place in St. Joseph designated and known as "the courthouse," at which sales of this character were usually made, and the sale in question occurred at the front door of that courthouse, the sale should be held valid; but on the other hand, if it should be made to appear, that two or more places were designated and known as courthouses, the sale should not be sustained unless it should further appear that the notice of sale designated which courthouse was meant, and that no

injury probably resulted from the method of conducting it.

"If proper notices of the sale," says Mr. Perry, "are not given, or if the proceedings are in any way contrary to justice and equity, the sale will not be allowed to stand." 2 Perry on Trusts [4 Ed.] sec. 602x. But, in determining such questions, the courts are governed by the circumstances, such as the number attending the sale, the price the property brings as compared with its real cash value, the probability or improbability of anyone having been misled by the vagueness of the notice, the attendance or non-attendance at the sale of the mortgagor; and his conduct, if present, while there; who the purchaser is, whether a stranger or the *cestui que trust;* the time elapsing after a sale before an application to redeem is made; the expenditure of money on the premises in the meantime; the customary place of conducting auction sales, etc. *Beatie v. Butler*, 21 Mo. 313; *Powers v. Kueckhoff*, 41 Mo. 431; *Hornby v. Cramer*, 12 How. Pr. (N. Y.) 490; *Ingle v. Jones*, 43 Iowa, 286; *Golcher v. Brisbin*, 20 Minn. 453; *Johnson v. Cocks*, 37 Minn. 530; Perry on Trusts, sec. 602r.

We think the plaintiffs are entitled to a trial of the issues they present. The supreme court of Illinois in *Chandler v. White*, 84 Ill. 435, held that where the deed of trust required the sale to be made at the north door of the courthouse, and before the day of sale the courthouse was destroyed by fire, a sale made on the ground immediately in front of where the north door was at the time of the execution of the deed, was good. And to the same effect are *Waller v. Arnold*, 71 Ill. 350, and *Long v. Rogers*, 6 Bis. 416. But it is not necessary for us here to decide whether a sale at the east door of the old courthouse under a notice especially

designating that courthouse as the one meant would be good, for no such sale is here involved.

III. As to the other assignment of error we quote, with our own approval, from the opinion of BLACK, J., in division number 1 as follows:

"The point made in the petition that the sale is. invalid or at least voidable, because made on the twenty-second day of February is not well taken. It is true section 551 of the Revised Statutes, 1879, concerning notes and bills, makes the declaration that the twenty-second day of February, and other days therein speci-- fied, shall be public holidays; and the same section then goes on to provide that for all purposes of present-- ment, acceptance and notice of dishonor of bills, notes. and other commercial papers, such holidays shall be considered the same as the first day of the week, commonly called Sunday. Section 1054 provides that no. court shall be open or transact business on Sunday, except in specified cases, and section 4039 provides. that no person shall serve or execute any writ, process, warrant or judgment, except in the specified cases, on the twenty-second day of February and the other days therein named. While these statutes do make the twenty-second day of February a public holiday, and prohibit the transaction of certain business on that day, still there is nothing which prohibits the transaction of other secular business. Business not thus in terms prohibited may be transacted on that day. *Russ v. Gilbert*, 19 Fla. 54; *Dunlap v. State*, 9 Tex. App. 179; *Pender v. State*, 12 Tex. App. 496; *McVerry v. Boyd*, 57 Cal. 406; *Bear v. Youngman*, 19 Mo. App. 41."

The judgment will be reversed and the cause remanded for trial. All concur in the result, the other judges expressing their views in separate opinions.

SEPARATE OPINION.

BLACK, J.—The deed of trust in this case provides for a sale by the trustee at the "east courthouse door in the city of St. Joseph."

There was at the date thereof a courthouse situate between Fourth and Fifth streets, north of Jule street, the east door of which fronted on Fifth street. To what extent this building had been destroyed at the date of the trustee's sale is not clearly stated. It is alleged, however, that the building was partially destroyed by fire, so that it must be assumed it was not wholly destroyed.

At the date of the sale the circuit court was held on the third floor of a building situate in a different part of the city. This building had a north but no east door. The county and probate courts were held at still another and a different place. The question is at which of these three places should the trustee have made the sale.

The opinion just read holds that the sale could be properly made at either of the two places where courts were held, and it seems to hold inferentially that a sale made at the east door of the partially destroyed courthouse building would be good. In my judgment the deed of trust is not so accommodating in its terms. It is to be observed that it does not call for a sale "at the courthouse door," as is often if not generally the case. It provides for a sale at the *east* door of the courthouse. The words used to fix the place of sale are specific, and the place is fixed with perfect certainty, just as much so as if the spot had been described by reference to the block of ground. When the parties executed the deed of trust they had in mind this particular place and no other place, and that is the place of sale fixed by the contract, and the place where the sale should be made.

The case of *Hambright v. Brockman*, 59 Mo. 52, is in perfect accord with what we have said; for there the deed of trust provided for a sale "at the courthouse door," and the sale was made at the door of the building then set apart by the county court for a courthouse.

·This case is unlike an execution sale, for in such case the law requires the sale to be made at the courthouse door during the session of the court, and, hence, it is held, and properly held, that the place where the court is held is the courthouse within the meaning of such a statute; but these trustees' sales may be made at any place which the parties see fit to designate. The analogy between execution sales and trustees' sales must not be pressed so far as to overthrow the contract made by the parties.

Here the parties, and not the law fixed and specifically designated the place of sale, and their contract should furnish the guide. To my mind it is out of all reason to say they intended a sale should, in case of default, be made at either one of two or three places. They have fixed the place of sale, and the fact that the building was partially destroyed by fire does not authorize the trustees to sell at any other or different place.

Suits to redeem from irregular trustees' sales are of frequent occurrence, and the judgments of this court in such cases show that the trustees should follow the powers as they are specified in the instrument under which he acts. This principle of law is well understood, and should not be disturbed. The liberal construction given to the specific and definite language used in this deed of trust leaves us, I think, without a guide, chart or compass. To such a construction I do not agree.

I, of course, agree that the judgment should be reversed and the cause remanded. GANTT, J., concurs with me in what I have said.

SEPARATE OPINION.

SHERWOOD, C. J.—Concurring, as I do, in reversing the judgment and remanding the cause, I prefer to state the reasons which influence me in such concurrence. These reasons are of a twofold nature: *First*, because in my opinion the rule declared in *Hambright v. Brockman*, 59 Mo. 52, followed afterwards in *Napton v. Hurt* in 70 Mo. 497, established a rule of property, which should not be lightly departed from; and, *second*, because that rule is intrinsically correct, as well as applicable to the facts in the case at bar, to the extent at least hereafter noted.

In *Hambright's case*, the deed of trust required that the sale thereunder should be made "at the courthouse door in Jackson county," in Independence. There, the courthouse proper had become dilapidated, and had been taken down to the first story, and was then undergoing repair, in consequence of which the county court had designated "Bank Hall" as the place for holding the circuit court; and the court was then in session at the place designated, and the sale took place at the door of that building, and held good.

In *Napton's case*, the deed of trust required the sale to occur at the *"west door* of the courthouse, in the City of Kansas;" a place where sales under such deeds for a long time previous and at the date of the deed in question were accustomed to be made; but the courthouse was by law removed to another and different locality, where the building which had become a courthouse, and used as such, *had no west door*, and yet it was held that a sale at the new courthouse would be good, and one made at the old courthouse would be bad, and *Hambright's case* was cited and followed.

With these rulings before me, I do not feel at liberty to depart from them, since I regard them as far

as they go applicable to the present case. Guided by these rulings, rulings which it must be presumed were known to the parties to the deed of trust now in controversy at the time the same was executed, and, therefore, virtually incorporated therein, the deed of trust here must be read with reference to those rulings, and a sense given to the words which designated the place of sale, in conformity to the law there laid down.

But apart from those rulings, where parties draw up a deed of trust, they contemplate that a default in payment may occur, and so they provide for a place of sale in the event of such default. They designate a place of sale, but with that idea of *locality* they couple the idea of *publicity*, and as the courthouse, the place where circuit and other courts are held, is usually the place, *par excellence*, where bidders and buyers do most congregate, they provide that the sale shall occur there, at the building: *used for that purpose;* in a word, *use'* is as potent a factor, or even more so than *locality*. If the building then used for the purposes of a courthouse have several doors, designation is made of the door where such sales are accustomed to occur, so that where the "east door" or the "west door" of the courthouse is thus designated, it is only equivalent to saying that the sale contemplated shall occur, *first*, at the courthouse; and, *second*, at that particular point *"at the courthouse where such sales are usually made."*

But suppose the courthouse be wholly or partially destroyed, or become so dilapidated as to be unfit for use, and to require repair, or be removed by law to another locality, or, owing to changes made in the building itself, the designated "east" or "west" door is bricked up and another opening made, what then? Does any one of the facts aforesaid cause the power of sale vested in the trustee to *lapse?* By no means, unless *restrictive* words are used showing a determination to confine the

sale to the *specified locality*—to the *then* courthouse. Otherwise, the law will presume that the contracting parties so drafted the instrument that it would cover any of the contingencies named: Of destruction, of dilapidation and consequent repair, or of removal by operation of law, or of change in the structure of the building. The law is *practical*, and presumes that parties employing its forms to secure and enforce individual rights will be equally practical in contemplating matters which in the course of human events are not unlikely to happen.

Take for instance the case of a courthouse built on the banks of the alluvial soil of the Missouri river; a flood sweeps away the soil on which it rests, and it falls into the turbid waters. In such case the very *locality* to all intents and purposes is gone, and another building is selected or erected for a courthouse, and courts, as at the old one, are held there. Can it be possible that the trustees, in order to make a valid sale, would have to proceed to the site of the original courthouse in a *flatboat*, and there make the sale? Such would certainly be the case if the idea of *locality* alone is to control.

The new location would still fill the requirements of the deed; it would be "*the courthouse*," and even if the deed should require a sale at the "east door" of the courthouse, and the building selected should have no "east door," this would not invalidate the sale, provided that the sale should occur at the only door of such a building as the deed of trust mentions. If, under the authorities cited, a sale would be good at another building because the original building had become dilapidated by the hand of man, I cannot see why the circumstances that the dilapidation occurred by reason of fire or the action of other elements, should

alter or vary the result, when another building, because of the dilapidation of the old one, has been selected.

If this case presented only the features mentioned, I should be in favor of affirming the judgment; but there are other features which cause this case to differ from those mentioned.

Here, the sale occurred, it is true, at the door of the building then used as a courthouse; but the petition alleges that there was another building not in that vicinity where the county and probate courts were held. What was the character or appearance of that building, or how much frequented, does not appear; but the petition alleges that the circuit court was not in session on the day of sale, and that persons who would have attended the sale and bid for the property refused to attend because of doubts entertained as to the legality of the sale, and in consequence of this the property sold for less than one-half of its value. These allegations the demurrer admits. Taking these allegations as confessed, a case is presented which calls for equitable interposition; because in such circumstances the trustee should not have made the sale; these circumstances should have induced him to have refrained from acting, regardless of the question of *locality*.

But for the elements aforesaid in this case, causing it to differ from those mentioned, I should be in favor of affirming the judgment; as it is, I concur in a reversal. MACFARLANE, J., concurs in this opinion.

SEPARATE OPINION.

BARCLAY, J.—The sale which is now in consideration took place at the north door of the house in whose third story the circuit court then held its sessions. The county and probate courts at that time were held in

another building.  The old courthouse, which had an east entrance, had been partly destroyed by fire and was not in use by the courts above mentioned.

The only question which we believe this case involves is whether the sale which actually took place satisfied the demand in the deed of trust for a sale at the "east courthouse door" in the city of St. Joseph. We think it did not.

In so holding, we do not regard it necessary to decide whether or not a sale at the east door of the old court building would be valid.  No such sale was made, and so we need not consider its possible effect had it occurred.

We do not start from the premise that there must necessarily be a place at which the power of sale conferred by the deed of trust may lawfully be exercised.

The language in which that power is defined may be such as to preclude the execution of the power where it does not point out, with reasonably certainty, the place of intended sale in view of the condition of things existing when the power is sought to be enforced. In that event the party entitled to resort to the security should institute foreclosure proceedings in court.

So it does not seem to us essential, on the present appeal, to rule whether or not the power of sale in the deed before us could have been lawfully executed at the east front door of the disused courthouse.  We consider it clear that it was not properly executed at the north door of the temporary circuit court building, in the circumstances described in the principal opinion just delivered.  Further than that we do not think this case requires us to go.

We concur in reversing the judgment and in remanding the cause, Judge BRACE uniting in this opinion.