THADDEUS J. R. BULLOCK, Appellant, v. PEOPLES BANK OF HOLCOMB, now doing business as STATE BANK OF CAMPBELL, Campbell, Missouri, and ELNA BULLOCK.—No. 38368.—173 S. W. (2d) 753.

Division Two, August 27, 1943.

588

*McKay & McKay* and *James A. Bradley* for Thaddeus J. R. Bullock, appellant.

590

*Hal H. McHaney* for State Bank of Campbell, defendant-appellant.

ELLISON, J.—The plaintiff appeals from a decree of the circuit court of Dunklin County, adjudging: (1) that the defendant State Bank of Campbell is the owner of a life estate in 200 acres of

land hereinafter described, for the life of plaintiff's mother, Elna Bullock; (2) that subject to said life estate the plaintiff holds the estate in remainder contingent on his surviving his mother, said remainder to be opened up in case the mother dies leaving both the plaintiff and other issue surviving; (3) that the defendant bank holds a reversionary fee interest in all said land subject to said life estate, in event the plaintiff predeceases the mother and she leaves no other issue; (4) and that said bank is not the owner of 80 acres of said land by virtue of a certain tax deed. The land in suit is described as: the N. E. 1/4 of the N. W. 1/4 of Sec. 25, and the N. W. 1/4 of Sec. 26, all in Twp. 20, N., Rg. 9, E., Dunklin County, Missouri. The land denied to the bank under its tax deed is the east half of said N. W. 1/4 of Sec. 26.

On this appeal the plaintiff claims the whole fee simple title to all the land, possession and back rents. The defendant bank also has appealed. It objects to clause 4 of the decree which holds the bank is not the owner of the 80 acres claimed under its tax deed. We refer to the two appellants hereafter as plaintiff and defendant. The pleadings are complicated. The plaintiff's amended petition is in four counts, one of them under the dragnet "hear and determine" title statute, Sec. 1684, R. S. 1939, Mo. R. S. A., sec. 1684. Another was in ejectment. But apparently the case was tried in equity; at least there was no jury. Both parties submit the cause on the theory that the pleadings sufficiently state the issues raised on this appeal, so we shall not refer to them further unless necessary to show what those issues are.

The common source of title is J. R. Bullock, father of the plaintiff, Thaddeus Bullock. The foundation of the claimed interests of both parties is a deed to said land made by him to plaintiff's mother on August 21, 1916, eleven days after their marriage. The plaintiff, Thaddeus, was born the next year, 1917. The aforesaid deed, and another executed by the mother to plaintiff Thaddeus in 1935, are the sole basis of plaintiff's claimed fee simple title. The defendant, starting with the J. R. Bullock deed, relies on certain subsequent conveyances and transactions. All these, plaintiff combats.

 When plaintiff filed this suit he was of the view that the aforesaid deed made by plaintiff's father to his mother in 1916, conveyed to her a fee simple title. The [755] second count of his petition so alleges. But now he and the defendant agree that it did not. Their theory is that it created an estate tail, which, by virtue of Sec. 3498, R. S. 1939, Mo. R. S. A., sec. 3498, was translated into a life estate in the mother, the estate in remainder going to those who should be her bodily heirs at her death. Partly quoted and partly summarized the deed is as follows (Mrs. Bullock was named in the deed as *Florence* Elna Bullock):

"This indenture made and entered into this 21st day of August, 1916, by and between J. R. Bullock of Dunklin County, Missouri, party of the first part, and Florence Elna Bullock, for her natural life and the remainder in fee to the bodily heirs of said Florence Elna Bullock, parties of the second part, and in the event the said Florence Elna Bullock, shall die without issue living or descendants of the issue of her body living, then said lands shall revert back to the grantor, if living, if he is not living, then to the estate of the said J. R. Bullock, and the title to the lands herein conveyed shall now vest and does vest now in the grantees, but the possession and control and the rents and profits of said lands shall be, and is, retained by grantor for his natural life, so that the grantor shall receive the profits and control the same until his death; said grantees being of the County of Dunklin and State of Missouri."

It will be observed the quoted premises of the deed refer to Elna Bullock and her bodily heirs in the plural as "parties;" and twice designate them as "grantees." Then follow the granting and habendum clauses, which, we have not quoted. The granting clause says the (nominal) consideration was paid by Elna Bullock, "party" of the second part, which necessarily was true. The statutory words of warranty, "grant, bargain, sell," in this clause also run to her as "the said party of the second part," but the phrase then continues, "as above stated." So, also, the habendum goes to her as "said party of the second part," but again the words are added, "and as above stated." And finally the specific covenants of warranty run to "the said parties of the second part."

There is nothing in the deed to make it mean other than what the parties agree is its proper construction, namely, that subject to a reserved life estate in the grantor, it conveyed a life estate to Mrs. Bullock, remainder to the heirs of her body surviving her; but if she should leave none, then said remainder to revert to the father if he survived her, otherwise to go to his estate (heirs). We think the parties are correct in that conclusion. J. R. Bullock died in 1935, but Mrs. Bullock and the plaintiff are living so the fee has not yet definitely settled and vested in particular individuals.

Going on, chronologically. The father and mother continued in possession of the land. Sometime later on a date not shown, J. R. Bullock, the father, gave his note to one H. W. Cherry for $3000, which was signed as sureties by the mother, Elna Bullock, and Pearl Brooks and husband, Harry Brooks. Pearl Brooks was a daughter of J. R. Bullock by a former marriage. In 1923 this note was purchased by the Peoples Bank of Holcomb, predecessor of the present defendant State Bank of Campbell. In August, 1926, in another county on change of venue the bank recovered judgment for

over $4000 on the note against all the signers.* A transcript of the judgment was filed the same month in Dunklin County. About six months later in February, 1927, J. R. Bullock paid $2000 on the judgment, reducing it to about $2100. In April, 1931, the lien of the judgment was revived on the suit of the bank in the court in which the same was rendered, and a transcript thereof filed in Dunklin County. No service on the judgment debtor Elna Bullock was obtained in that proceeding.

On November 14, 1934, the father J. R. Bullock, his wife Elna Bullock not joining, together with his daughter Pearl Brooks and her husband Harry, executed a warranty deed conveying the same 200 acres of land here involved to one J. L. Robinson, which deed was recorded in Book 108, p. 346, Dunklin County. On the same day that grantee, Robinson, and his wife, executed a deed of trust on the land back to J. R. Bullock and his daughter, Pearl Brooks. Digressing in point of chronology, this deed of trust was later foreclosed and a trustee's deed in foreclosure executed to Pearl Brooks, the same being recorded on November 20, 1939, in Book 121, p. 462. Five days earlier, on November 15, 1939, Pearl and Harry Brooks quitclaimed the land to the Peoples Bank of Holcomb, predecessor of defendant, by deed recorded in Book 121, p. 466.

J. R. Bullock died intestate on February 19, 1935, still in possession of the land. On August 8, 1935, the defendant bank caused an execution to be issued out of the court which had rendered the judgment against the Bullocks and Brooks in 1926. The execution was levied in a few days, on August 14, on "all the right, title and interest" of the mother, Elna Bullock, only, in the 200 acres of land. It was directed to the sheriff of Dunklin County, and he filed an abstract of the levy in the recorder's office, Book 111, p. 198, on the same day. The land was sold at execution sale under that levy, after due advertisement, on October 28, 1935, and bought in by the bank for $600, the sheriff's deed being recorded in Book 111, p. 611.

In the interval between the levy and sale, on October 1, 1935, the mother, Elna Bullock, executed to the plaintiff, Thaddeus Bullock, the other deed on which he now relies, covering the 200 acres in suit. It was a quitclaim deed in ordinary form, for a consideration of $1 and other valuable considerations, but contained this unusual recital:

"This conveyance is made subject to acceptance by Peoples Bank of Holcomb of proposition contained in letter from L. R. Jones, my attorney, to James A. Bradley, attorney for Peoples Bank of Holcomb. If Peoples bank of Holcomb accepts this proposal within fifteen days

*One earlier phase of that litigation is covered in Peoples Bank of Holcomb v. Bullock, 216 Mo. App. 492, 270 S. W. 119.

from this date, then interest hereby conveyed is subject to .interest of Peoples Bank under said proposal. Upon failure to accept said proposal within fifteen days then this interest which rests now shall not be devested or postponed to any interest of said bank.''

The recital was explained at the trial in the testimony of Senator Jones, who had been Elna Bullock's attorney when the quitclaim deed to Thaddeus was made. About two months. theretofore he had written the attorney for the bank on the theory that Mrs. Bullock owned a life estate in the 200 acres, and that morally she and Mrs. Brooks each should pay half of the balance of over $2000 still due on the judgment; but proposing that Mrs Bullock would assign all the rents therefrom. to the bank beginning that year, until the taxes and judgment, with interest, were paid. This letter was transmitted to the bank by its attorney, and the bank orally declined the offer because, among other reasons, there were delinquent taxes on the land exceeding $1100. Thereupon the quitclaim deed was executed by Elna Bullock to Thaddeus, her son, the aforesaid recital being inserted therein to keep her offer to the bank alive. The. deed was filed for record the day it was written, and recorded in Book 111, p. 338.

On January 2, 1936, about two months after the execution sale of October 28, the bank brought suit to set aside the quitclaim deed as being in fraud of creditors and specifically the bank's aforesaid judgment. Elna Bullock and the plaintiff Thaddeus Bullock were joined as defendants, the latter being represented by guardian ad litem. On February 20, 1936, the court entered a decree declaring the deed void for fraud, as aforesaid, and ordering it cancelled from the records. The bank took possession of the land on or about the above date, January 2, 1936, and has held it ever since receiving all the rents and profits. The record shows its aforesaid judgment was satisfied on April 19, 1940. We shall state a few further facts in dealing with the bank's appeal from that part of the decree.

As we understand it, plaintiff's theory of the law runs as follows. His father's deed of August 21, 1916 to his mother, conveyed to her a life estate, with remainder over to her unborn issue. As soon as he was born that remainder vested in him and he became a vested remainderman. When the mother executed her quitclaim deed of October 1, 1935, it conveyed to him her life estate. The two interests thereupon *indissolubly merged,* and he became the owner in fee simple. The defendant bank's levy and execution sale under its judgment were only directed against the mother's *life* estate. But since that interest had become fused with the remainder so the two could not be separated, the execution sale passed nothing, merely leaving the land covered by the *lien* of that levy. When the bank satisfied the judgment in 1940, that ended the matter.

We do not agree. In the first place the plaintiff was not and is not a vested remainderman but a contingent remainderman. He was not named as a grantee in remainder. He must outlive his mother to get an unconditional fee interest. If he does not he will not be her heir. The deed so declares, as well as the statute. The latter says "the remainder shall pass in fee simple absolute to the person to whom the estate tail would, on the *death* of the first grantee . . . first pass according to the course of the common law." 19 Am. Jur. sec. 55, p. [**757**] 517; 21 C. J. sec. 58, p. 937; Willhite v. Rathburn, 332 Mo. 1208, 1211(1), 61 S. W. (2d) 708(1); Byrd v. Allen. (Mo. Div. 2), 171 S. W. (2d) 601, 694; Norman v. Horton, 344 Mo. 290, 298(5), 126 S. W. (2d) 187, 191(8, 9), 125 A. L. R. 531.

Neither do we think the estates have merged. It may be if the remainder interest had been vested (as if the deed had said it should go to the *children* of the mother) then the plaintiff's remainder interest would have merged pro tanto with the life estate, even though the remainder would open up to admit other children that might be born. We need not express an opinion on that. But since the plaintiff's interest was contingent and might not vest, the weight of authority holds it would not merge. 21 C. J. sec. 236, p. 1036; McCreary v. Coggeshall, 74 S. C. 42, 53 S. E. 978, 7 L. R. A. (N. S.) 433, note; In re Washburn's Estate, 11 Cal. App. 735, 106 Pac. 415. The rule is, furthermore, that "if there is a judgment or mortgage or lease for years, or any other interest derived out of, or attaching upon, the life estate, the tenant for life cannot destroy these rights by a surrender, a release, or any other voluntary act for the purpose of merging the particular estate in the greater." 19 Am. Jur. sec. 139, p. 593. In other words, the defendant bank's judgment and levy could not be thus defeated.

But the best reason why the remainder and life estate did not merge is that Elna Bullock's deed conveying the life estate to the plaintiff was adjudged void and cancelled in the suit brought by the defendant bank in 1936. Plaintiff introduced in evidence the petition in that case, and argues the judgment based thereon itself was void and can be collaterally attacked in this case, because the petition "shows upon its face that it was so amended, altered and changed prior to the rendition of the judgment so as to constitute no cause of action whatever." We know of no law that a judgment will be void because the petition in the cause has been amended. Furthermore, the petition is not shown by the record to have been amended. It is set out in its entirety and there is no hint or suggestion that it had been amended at all.

In addition to that, plaintiff's objection at the trial was not on that ground. The contention then was that it failed to state a cause of action. But it does. It charged that after defendant's execution

levy was made on August 14, 1935, Elna Bullock made the quitclaim deed of October 1 conveying her life estate to the plaintiff Thaddeus for a pretended consideration of $1 and other good and valuable considerations, whereas it was without adequate consideration and was made for the sole purpose and intent of cheating and defrauding the defendant as her creditor on its said judgment, and to place said land and her life estate therein out of defendant's reach; that the deed was never delivered, but was recorded by the grantor, herself, and then retained or controlled by her, the plaintiff Thaddeus knowing and understanding the purpose for which it was made; and that the defendant bank was unable to find any other property of Elna Bullock out of which it could make its judgment debt. This, undoubtedly, was enough to state a cause of action invulnerable to collateral attack.

Another contention made by plaintiff why the bank's suit to set aside the quitclaim deed was ineffectual, is that when a conveyance is set aside as in fraud of a creditor of the grantor, it is vitiated only as to such creditor, but not as between the parties to the conveyance; and that the title is not thereby reinvested in the grantor or his heirs or privies. On this point Stevenson v. Edwards, 98 Mo. 622, 625-6, 12 S. W. 255(1), is stressed. This is true, and there are later cases to the same effect. Stierlin v. Teschemacher, 333 Mo. 1208, 1220, 64 S. W. (2d) 647, 653(5, 6), 91 A. L. R. 121.

But the bank's suit was not in the interest of Elna Bullock or her heirs. It was brought to protect the bank *itself* as a creditor. The levy was made and became a lien on the land on August 14. The quitclaim deed was thereafter executed by Elna Bullock and recorded on October 1. The bank bid in the land at the execution sale on October 28. It would have been no different if some third party had bought it. How could the bank protect itself and realize on its judgment debt except by selling Elna Bullock's interest therein and applying the sale proceeds on the debt? It had a right to buy the land at the execution sale first, and then to sue in equity to set aside the fraudulent quitclaim deed as a cloud on its title. Castorina v. Herrmann, 340 Mo. 1026, 1031(4), 104 S. W. (2d) 297, 299(5); Littick v. Means (Mo. banc), 195 S. W. 729, 730(1). Plaintiff is evidently confused in this contention. We rule it against him. The foregoing disposes of [758] all of plaintiff's assignments charging the decree erred in adjudging the defendant bank was the owner of Elna Bullock's life estate. We hold it is.

Plaintiff also assigns error in the third finding in the decree, that the defendant bank is the owner of J. R. Bullock's reversionary interest in the land—that is to say, the fee simple title if Elna Bullock should die without living issue. In his deed of August 21, 1916, J. R. Bullock specifically reserved this interest to himself if he

outlived Elna Bullock, or to his estate (heirs) if he did not. It would have been the same if he had not made that reservation. 19 Am. Jur. sec. 49, p. 509; Williams v. Reid (Mo., Div. 1), 37 S. W. (2d) 537, 539(4). But plaintiff's argument is that there was and could be no reversionary interest outstanding in J. R. Bullock or his heirs, because his deed of August 21, 1916, and the statute, Sec. 3498, supra, immediately vested the fee simple title in him (plaintiff) subject to the life estate of his mother, Elna Bullock. This is wholly incorrect for the reasons heretofore stated.

The defendant bank claims title to this reversionary interest through the warranty deed of J. R. Bullock and Pearl Brooks, executed to J. L. Robinson on April 14, 1934. Robinson and wife contemporaneously executed a deed of trust back to the grantors, which was foreclosed in November, 1939. Pearl Brooks was the purchaser. At or about the same time she and her husband quitclaimed the land to the defendant bank. This passed the reversionary interest to the bank if it was vendible; and it was. 33 Am. Jur., sec 194, p. 669; 21 C. J., sec. 183, p. 1020; Lewis v. Lewis, 345 Mo. 816, 827(5), 136 S. W. (2d) 66, 71(9).

The only remaining question for decision is raised by the defendant bank's assignment that the fourth clause of the decree erred in deciding the defendant bank is not the owner in fee simple of the East ½ of the N. W. ¼ of Sec. 26, supra, a part of the 200 acres, by virtue of its tax deed. The decree based this finding and adjudication mainly on the familiar rule that as between the life tenant or his successor in possession and the remaindermen, it is the duty of the former to pay the taxes. The defendant bank concedes the rule but answers that it was not in possession when it purchased at the tax sale, and that the taxes for which the land was sold had become delinquent in prior years, before it owned the life estate. That is true. The bank purchased at the tax sale on November 12, 1935, 49 days before it entered into possession of the 200 acres on January 1, 1936; and the delinquent taxes on the 80 acres for which the tax sale was held, accrued in 1931 and 1932, several years before J. R. Bullock died.

But the interest thus acquired by the bank at that sale was not a *title*, for the sale was under the Jones-Munger Law, Sec. 11130.* Under Sec. 11133, upon such sale the purchaser receives only a "certificate of purchase," as against which the landowner has an absolute right to redeem during the succeeding two years, Sec. 11145; and a similar right during the next two years up to the time the purchaser shall have demanded his deed within that period. Secs. 11147 and 11149; Hobson v. Elmer, 349 Mo. 1131, 1136, 163

*This and subsequent references to the statutes are to R. S. Mo., 1939, and same section numbers, M., R. S. A.

S. W. (2d) 1020, 1023(2). During the first two years of the statutory four years the certificate holder does not have even an equitable title, but only "an inchoate or inceptive right." State ex rel. City of St. Louis v. Baumann, 348 Mo. 164, 168(3), 153 S. W. (2d) 31, 34(4). The tax deed in this case was not executed until November 10, 1939, and was not recorded until November 13, 1939, four years and one day after the tax sale. Sec. 11137 required it to be recorded within four years. In other words, when the bank acquired the equitable title on November 12, 1937, two years after the sale, and when it acquired the legal title (if any) by the tax deed, on November 13, 1939, it (the bank) had long been in possession in right of Elna Bullock's life estate.

Throughout this whole four years, the bank was holding the certificate of purchase as an adversary weapon against the outstanding interests in the title without risk to itself, whereas the plaintiff Thaddeus Bullock, a minor less than 19 years old, with only a contingent remainder and out of possession, was helpless. His title was contingent not only on his mother's life span, but on his own as well. And just two days after recording the tax deed on November 13, 1939, the bank bought the J. R. Bullock reversion through the Pearl Brooks quitclaim deed, and the foreclosure of the J. L. Robinson deed of trust, of which latter 20 days notice had been published, [759] doubtless, under Sec. 3463. In this connection it should be remembered this trustee's foreclosure deed was *recorded* on November 20, 1939; its date is not shown. The Brooks quitclaim deed was dated November 15, 1939. This indicates the bank may have had in mind the acquisition of that interest, when it received the tax deed.

We think the decree was right in holding that the defendant bank got no title to the 80 acres by the tax deed. It is true the bank, as owner of the life estate of Elna Bullock, was not under any fiduciary obligation to pay the delinquent taxes for 1931 and 1932, because they did not accrue during the life tenancy of Elna Bullock, but during the preceding reserved life tenancy of J. R. Bullock. That obligation applies only to taxes accruing during the term of the life tenant in possession.[1] But nevertheless those delinquent taxes were an encumbrance on the whole title, the bank's as well as the plaintiff's. And while the bank owed no duty to the plaintiff Thaddeus Bullock to redeem the land from the encumbrance, yet when it permitted foreclosure of the tax lien, purchased the same at the tax sale and thereafter obtained a tax deed, the purchase inured pro tanto to the benefit of the plaintiff as remainderman upon his making contribution within

[1] 21 C. J., sec. 93, p. 956; 33 Am. Jur., sec. 439, p. 965; Weller v. Searcy, 343 Mo. 768, 781, 123 S. W. (2d) 73, 80; Estey v. Commerce Trust Co., 333 Mo. 977, 991(7), 64 S. W. (2d) 608, 615.

a reasonable time. Peterson v. Larson, 285 Mo. 119, 128-9, 225 S. W. 704, 706(5).

We understand that to be the law of this state governing a life tenant, or his successor, in possession, whether the encumbrance be a tax lien imposed by law or a contract lien imposed by mortgage, and also regardless of whether the taxes or interest accrued before the life tenancy began.[2] In nearly, if not all, the cases just cited in the margin the encumbrance paid off had been created before the commencement of the life estate. In some of them, as in the Allen and Hinters cases, it was past due. Inferentially that was true in most of the others. In the Witcher case some of the interest on a mortgage had accrued before and some afterwards. The only difference that would make is that if the prior encumbrance covered the whole title (life estate and remainder) and the life tenant was compelled to buy the land at the foreclosure sale to save himself, he would be entitled to contribution from the remaindermen, or more accurately they would be entitled to participate in the benefits of the purchase only by making due contribution within a reasonable time. If it was for current interest or taxes accruing during the term of the life estate, the life tenant would be bound to pay all of it, as was held in the Duffley case.

Annotations in 17 A. L. R. p. 1399, VII; 94 A. L. R. p. 321, VII; and 126 A. L. R. p. 871, VII, say that *if* it is the duty of the life tenant to pay the taxes he cannot purchase a tax title adverse to the remaindermen. That is true, of course, when the life tenant in possession owes the whole tax. He cannot directly or indirectly acquire the entire title as against the remaindermen at a foreclosure sale on his own sole debt. But the converse is not true, that if he is *not* dutybound to pay the tax he *can* thus sell out the remaindermen, and reject their offer to make contribution. In other words the rule is based on the *fiduciary relation* of the parties and not on the *duty* to pay. That rule was applied in Defreese v. Lake, 109 Mich. 415, 67 N. W. 505, 63 Am. St. Rep. 584, 593-5, 32 L. R. A. 744, 752-4, even against a life tenant subject to a preceding life estate, and therefore out of possession, when he voluntarily purchased at a tax sale— exactly the situation of Elna Bullock here before J. R. Bullock died. But we do not base our decision on that case or decide that it states

[2] 21 C. J., sec. 74, p. 942; 33 Am. Jur., sec. 443, p. 972; Allen v. DeGroodt, 98 Mo. 159, 161-2; 11 S. W. 240, 14 Am. St. Rep. 626; Id., 105 Mo. 442, 445, 452, 16 S. W. 494, 496; Hinters v. Hinters, 114 Mo. 26, 28-9, 21 S. W. 456; Cockrill v. Hutchinson, 135 Mo. 67, 74, 36 S. W. 375, 377; Rutter v. Carothers, 223 Mo. 631, 636-7, 638-9, 122 S. W. 1056, 1057-8; Peak v. Peak, 228 Mo. 536, 552, 128 S. W. 981, 985, 137 Am. St. Rep. 638; Matthews v. O'Donnell, 289 Mo. 235, 268, 233 S. W. 451, 459(7, 8); Witcher v. Hanley, 299 Mo. 696, 702-3, 253 S. W. 1002, 1003(2-5); Duffley v. McCaskey, 345 Mo. 550, 554(1), 134 S. W. (2d) 62, 63(1), 126 A. L. R. 855; Souders v. Kitchens, 345 Mo. 977, 980(1), 137 S. W. (2d) 501, 503; Lohmuller v. Mosher, 74 Kan. 751, 87 Pac. 1140, 11 Ann. Cas. 469; Phelan v. Boylan, 25 Wis. 679.

the law in Missouri, particularly since the defendant bank *was* in possession when it acquired [760] whatever title it got, or might have had, through the tax sale.

The defendant bank in this case would have been entitled to contribution from the plaintiff Thaddeus Bullock for his proportionate share of the 1931 and 1932 taxes on the 80 acres. But it does not defend on that ground, or plead a lack of tender. On the contrary it claims the title in fee simple through tax deed. And as we shall show in the next paragraph, the lien for those taxes has expired.

The tax deed was not recorded within four years from the date of the tax sale, as required by Sec. 11137, but one day too late. That sale was on November 12, 1935. The four years ended on Saturday, November 11, 1939, which was Armistice Day. It and the next day, Sunday, were both public holidays. Sec. 15310. Defendant cites Sec. 655, clause 4, providing that when the last day within which an act shall be done falls on Sunday, it shall be excluded. But the section does not so provide with respect to Armistice Day. The deed should have been recorded on or before that day, and since it was not, defendant's lien or title rights thereunder expired, as Sec. 11137 provides and the plaintiff contends. The fact that a day is made a holiday by statute does not mean business cannot be transacted on that day, except insofar as that statute or some other imposes such restriction. Cartwright v. Liberty Bell Tel. Co., 205 Mo. 126, 131(1), 103 S. W. 982, 983(1), 12 L. R. A. (N. S.) 1125; Stewart v. Brown, 112 Mo. 171, 182, 20 S. W. 451, 453(3); State v. Green, 66 Mo. 631, 644(3); In re Charles Green, 86 Mo. App. 216, 223.

The judgment and decree are affirmed. All concur.