ERNEST HOBSON, by N. D. HOBSON, his guardian, v. WM. P. ELMER, JACK WESLEY, and C. K. DALRYMPLE, Appellants.—163 S. W. (2d) 1020.

Division One, July 28, 1942.

*Wm. P. Elmer, J. Dean Leffler* and *G. L. Gamblin* for appellants.

*E. W. Bennett* for respondent.

HAYS, J.—In March, 1941, the respondent Ernest Hobson, through his statutory guardian, N. D. Hobson, instituted the present proceeding by filing in the Circuit Court of Dent County,

Missouri, a petition in ejectment, seeking to obtain possession of a portion of two city lots in Salem, Missouri. The defendants named in the original petition were W. P. Elmer and Jack Wesley, who are now appellants in this court. The defendant Elmer answered, admitting that he claimed ownership of the property here involved and that his co-defendant Wesley was in possession thereof, denying the other allegations of the petition and setting up in considerable detail the facts which form the basis of his claim of ownership. Defendant Elmer also asked that one C. K. Dalrymple, Collector of Dent County, be impleaded as a party to the cause of action. He then asked that certain redemption certificates for the real estate herein involved, issued by Dalrymple to Hobson, be cancelled and set aside; that a certificate to purchase at a tax sale held by the defendant Elmer be reinstated and that Elmer be allowed to tender certain amounts due thereunder into court and upon such tender to receive a tax deed, and that the title to the land be decreed to be in Elmer. Defendant Wesley's answer was an admission of his possession and a general denial of other allegations. Summons was issued for Dalrymple and he appeared, filing his cross-answer to the original answer of Elmer which, as to him, was actually a third party petition, in which he denied the allegations of Elmer's pleading. Plaintiff also replied, denying the allegations made by Elmer. The cause was tried as a suit in equity and a decree in favor of the plaintiff entered by the chancellor. From this decree, after an unavailing motion for new trial, the defendants Elmer and Wesley have appealed.

The evidence preserved in the record discloses the following state of facts: In 1935 Wesley was the undisputed owner of the land in question, subject, however, to a deed of trust which was foreclosed December 13, 1935. A trustee's deed was made to one Gamblin. In November, 1936, there were delinquent taxes due upon this land from the years 1928 to 1935, inclusive. Apparently the land had been advertised for sale twice under the provisions of the Jones-Munger Tax Law. [Section 11125, R. S. Mo. 1939 et seq.] In November, 1936, the defendant Dalrymple, after proper legal advertisement, proceeded to offer these lands for the third and final time and Elmer became the highest bidder for cash therefor. The lands were sold in two tracts, each tract being a part of one city lot. Elmer's bid on one tract was $1.00 and on the other $5.00. Two certificates of purchase were duly issued to him after he had paid the amount of his bids plus certain costs which appear to have amounted to $38.40.

In February of the next year (1937) Gamblin gave a warranty deed to this land to one Hoodenpyle, who immediately executed a deed of trust thereon to the plaintiff's guardian. On October 25, 1940, this deed of trust was foreclosed and plaintiff, through his guardian, became the highest bidder at the foreclosure sale and received a trustee's

deed. In the meanwhile neither Elmer, Hoodenpyle, nor plaintiff's guardian had paid the taxes on this land.

The facts in connection with Elmer's request for a tax deed and the alleged redemption of the land by the guardian are in dispute. Elmer called as a witness his secretary Ata Higgins, who testified that she went to the Collector's Office with the certificates of purchase and presented the same, requesting a statement as to the amount of the taxes due on said land. The collector was not there and his deputy stated that she did not know anything about the matter and that Mrs. Higgins would have to return later. Mrs. Higgins did return and left the certificates with the collector personally. She got a statement of the taxes and brought the same back to Mr. Elmer. Elmer later went over personally to the Collector's Office and returned to his own office. Elmer testified in his own behalf that he sent Mrs. Higgins with the certificates to the collector, after being informed by Mr. Dalrymple on the street that the time for securing the deed had almost elapsed; that he later went to the Collector's Office himself but that Dalrymple was not there and that the deputy told him that the tax deed had been made out and that there was a statement of taxes around the office somewhere. She looked for the deed and the statement but could not find them and informed Elmer that he would have to come back when Dalrymple was present. Elmer again returned to the Collector's Office and found Dalrymple there. He told him he had come for his deed, but was informed that Dalrymple was too busy to take care of the matter, and to come back again. Elmer returned a third time and Dalrymple was again absent and his deputy stated that she had not found the papers and could not take care of the business. Shortly thereafter and before Elmer could return a fourth time he received a notice that plaintiff's guardian had redeemed the land.

Dalrymple, testifying as a witness in his own behalf, denied that Mrs. Higgins had left the tax certificates with him and denied that he had refused to take up the matter with Elmer. He admitted that Mrs. Higgins and Elmer had called at the office and states that these calls had occurred in October. On the first of November, 1940, subsequent to these various conversations of Elmer and his secretary with Dalrymple, the guardian appeared at the Collector's Office, paid the delinquent taxes and the amounts due Elmer under the law and was given two redemption certificates.

 The first question presented is whether or not the owner of property which has been sold for taxes may redeem the same at a time more than two years subsequent to the sale date. It will be noted that in the present case no effort at all to redeem was made within the two-year period nor indeed until practically the end of the fourth year. In fact the plaintiff's guardian had not obtained legal title to the premises until about a month prior to the attempted re-

demption. The answer to the question thus raised will depend upon a construction of certain sections of the Jones-Munger Act. It will be recalled that under that act lands upon which the taxes have become delinquent are advertised for sale by the collector. The purchaser at such sale is not given a deed directly but receives instead a certificate of purchase which he may not present to the collector until two years have elapsed since the sale. At the end of this two-year period he is required to present the certificate, to pay subsequently accrued taxes and certain fees and is then given a fee simple deed to the property. We have held that after the sale and until the execution of the collector's deed legal title remains vested in the record owner of the lands, subject to a power in the certificate holder to obtain a deed by following the procedure provided for in Sections 11149 and 11150, R. S. Mo. 1939. [Cf. Donohoe v. Veal, 19 Mo. 331; Kohle v. Hobson, 215 Mo. 213, 114 S. W. 952; Hilton v. Smith, 134 Mo. 499, 33 S. W. 464, 35 S. W. 1137 (all decided under former statutes).] We have also said that the right of the certificate holder is in the nature of an equitable title similar to that of a vendee under a contract of sale. [State ex rel. City of St. Louis v. Baumann, 348 Mo. 164, 153 S. W. (2d) 31, l. c. 34.] Obviously the title of the original owner may be transferred subject to the equities of the certificate holder. The right of the original owner to redeem the property and thereby destroy the power of the certificate holder to obtain a fee simple title is granted by Section 11145, R. S. Mo. 1939, and to determine when that right expires we must construe the provisions of that section. The opening sentence of the section last cited reads as follows: "The owner or occupant of any land or lot sold for taxes, or any other person having an interest therein, may redeem the same at any time during the two years next ensuing, in the following manner." The statute then sets out the requirements that the redemptioner must meet. He shall pay the collector for the use of the purchaser the amount of the original bid, the costs of sale and interest at a rate specified in the certificate of sale which shall not exceed ten per cent. Upon such redemption the collector is required to notify the purchaser thereof and the mailing of this notice stops the running of interest. Then follows this provision: "In case the party purchasing said land, his heirs or assigns, fails to take a tax deed for the land so purchased within six months after the expiration of the two years next following the date of sale, no interest shall be charged or collected from the redemptioner after that time."

Section 11147, R. S. Mo. 1939, must also be read in connection with the above quoted provisions: This section requires the redemptioner to pay to the certificate holder the value of any lasting and valuable improvements placed on the land by him, but it concludes with the following provision: "No compensation shall be allowed for improvements made before the expiration of two years from

the date of sale for taxes." While the first sentence of Section 11145, supra, apparently limits the right of redemption to a period of two years following the sale, such a construction is negatived by the last quoted words of the section and by the proviso contained in Section 11147, supra. If the right of redemption absolutely ceases at the end of two years there would be no purpose in a provision that the redemptioner could not be charged interest after the end of the two years and it would be unnecessary to state that the redemptioner was not required to make compensation for improvements placed on the land before the expiration of two years and impliedly that he was required to make such compensation after the end of the two years, if he could not redeem at all after the end of the two years.

We must, however, also take into consideration the language of Section 11149, R. S. Mo. 1939: "If no person shall redeem the lands sold for taxes within two years from the sale, at the expiration thereof, . . . the collector of the county in which the sale of such lands took place shall execute to the purchaser . . . a conveyance of the real estate so sold, which shall vest in the grantee an absolute estate in fee simple."

There is one manner and, in our opinion, only one manner in which these seemingly conflicting provisions may be harmonized. We construe them to mean that the owner of the lands has an absolute power of redemption which cannot be defeated by the purchaser during and up to the end of the two-year period. Thereafter the purchaser has a right to obtain a collector's deed at any time within the next two years by complying with the various statutory provisions, to-wit: by producing to the collector his certificate of purchase, paying the subsequently accrued taxes and legal fees and demanding his deed. If, after the end of the two-year period and before the purchaser has complied with these conditions precedent to obtaining his deed, the owner or transferee applies for a redemption and makes the required payments he thereby destroys the power of the purchaser to obtain a deed.

The foregoing discussion brings us to the consideration of the second question here involved which is: Did the defendant Elmer perform everything that he was required to perform in order to be clearly entitled to a collector's deed before the alleged redemption was made? Obviously if a certificate holder has actually tendered to the collector his certificates, together with the amounts due thereunder, his right to a deed cannot be defeated simply because the collector has refused or failed to execute and deliver the deed. An attempted redemption at such time would be unavailing.

We turn now to a consideration of the facts of the present case. In so doing we are mindful of the rule that in an equity suit where the evidence is altogether oral, due deference should be paid to the findings of the chancellor. If we are to believe the evidence of Elmer

and his secretary the certificates were not only tendered to the collector but were left with him. The most serious question, however, is raised in connection with the failure of Elmer to actually tender to the collector the amount due him. It is true that at one time the collector furnished Elmer's secretary a statement of the amount, which statement was apparently lost or overlooked, but after that time on several different occasions Elmer presented himself at the Collector's Office, stating that he was ready, willing and able to pay the amounts due and requested the collector to furnish him with such amounts and he was put off by the collector. It is also true that on some of the occasions mentioned the collector was not personally present; but his deputy was present, and if the collector is in the habit of absenting himself from his office from time to time it is his duty to leave the same in charge of a deputy who will perform all of his duties just as the collector himself would have done. The refusal or failure of the deputy to carry out the transaction has the same effect as a refusal of the collector himself. While there is a conflict in the evidence between the collector on the one hand and Elmer and his secretary on the other, the outstanding fact in the case is that Dalrymple did not see fit to call his deputy to the witness stand or to account for her absence. She was not a witness equally available to both parties, for she was an employee of Dalrymple who presumably would know the content of her testimony if given. A strong inference may, therefore, be drawn from her failure to testify. Furthermore, Dalrymple admitted ▮▮▮ that he had drawn a deed to Elmer but had later burned it. If, after the drawing up of the deed, a long period of time had elapsed without any action on Elmer's part, Dalrymple would have been justified in this act; but, according to his own testimony he kept the deed only a few days or at most a week or two before destroying it. An unfavorable inference must necessarily be drawn from this act. On the state of the record and in spite of the conflict in testimony we must be called upon to accept Elmer's story as to what happened. So accepting the testimony of Elmer, we are constrained to hold that he was prevented from receiving his deed by the acts of the collector and that he had done everything in his power to comply with the statutory requirements before the attempted redemption was made.

▮ The respondent contends that the consideration paid by Elmer at the sale was so small in comparison with the admitted value of the land as to shock the conscience of the court and amount to a legal fraud. It is quite true that where a purchaser at a public sale, such as a mortgage foreclosure sale, pays an insignificant portion of the real value of the property, his purchase will be set aside by the courts; but we think that the present plaintiff is not in a position to take advantage of such rule. The present plaintiff was not the owner of this land at the time of the alleged tax sale. The tax sale and

consideration paid by Elmer thereat were matters of public record. Had the plaintiff's guardian taken the trouble to secure an abstract for this land before taking a mortgage thereon, or had he consulted the record itself he would have known of Elmer's rights. He states that he did not do this. But his failure to learn the facts was as inexcusable as the taking of the mortgage with full knowledge would have been. Furthermore, after the plaintiff's guardian took this mortgage he could have redeemed the land at any time, but he made no effort to do so until Elmer had done everything within his power to secure the deed to which he was lawfully entitled. The failure of the guardian so to do was, it is true, partially accounted for by instructions he had received from the Veteran's Bureau at Washington. Still such instructions cannot change the fact that no actual attempt at redemption was made. We think, therefore, that plaintiff cannot be permitted to take advantage of the allegedly inadequate consideration paid by Elmer.

Hence the decree of the chancellor was for the wrong party. The cause must be reversed and remanded with instructions to enter a decree cancelling the plaintiff's redemption certificates and permitting the defendant Elmer to tender into court the amounts due under the statute in order to secure his deed, and ordering the collector upon such payment into the registry of the court to execute a tax deed to Elmer, and decreeing title to the land upon such payment to be vested in the defendant Elmer and dismissing plaintiff's original petition. It is so ordered. All concur.