J. Kevin **MANARD** and Janet K. **McKinney, Respondents,**

v.

**SNYDER BROTHERS COMPANY,** a Missouri corporation whose charter has been forfeited, Olney R. (Rick) Neal, Jr. and Judy C. Neal, **Appellants.**

No. 21377.

Missouri Court of Appeals,
Southern District,
Division One.

March 6, 1998.

Norman E. Rouse, Collins, Webster and Rouse, P.C., Joplin, for appellants.

Robert P. Warden, Chirstopher S. Warden, Joplin, for respondents.

CROW, Judge.

Plaintiffs, J. Kevin Manard and Janet K. McKinney, brought this action in 1995 against three defendants: Snyder Brothers Company, a "Missouri corporation whose charter has been forfeited," Olney R. (Rick) Neal, Jr. and Judy C. Neal. Plaintiffs' petition alleged Rick[1] was president and sole director of Snyder Brothers Company ("SBC") when its charter was forfeited, and Judy was then SBC's treasurer.

The goal of Plaintiffs' petition was to quiet title in them to two parcels of land formerly owned by SBC and sold to Plaintiffs' mother, Mary Manard (now deceased[2]), by the collector of Jasper County because of unpaid taxes.

The trial court quieted title to both parcels in Plaintiffs. Defendants appeal.[3]

Defendants' four assignments of error can be coherently discussed—if at all—only after an account of the mind-boggling facts. Because the facts and legal issues pertinent to each of the two parcels are different, this

1. For brevity and clarity, this opinion henceforth refers to defendant Olney R. (Rick) Neal, Jr. as "Rick," and to defendant Judy C. Neal as "Judy." For the same purposes, this opinion henceforth refers to plaintiff J. Kevin Manard as "Kevin," and to plaintiff Janet K. McKinney as "Janet." No disrespect is intended.

2. For brevity and clarity, this opinion henceforth refers to Mary Manard as "Mary." No disrespect is intended. Kevin testified Mary died December 16, 1992.

3. At trial (October 2–3, 1996), Rick acknowledged he was president and "sole director" of SBC in 1987 and "allowed the charter to be forfeited." His wife, Judy, was the only other officer of SBC at that time. The notice of appeal names SBC as an appellant, along with Rick and

Judy. The brief for that trio does not explain how SBC, which ceased to exist as a legal entity when its charter was forfeited, *Clark Estate Co. v. Gentry*, 362 Mo. 80, 240 S.W.2d 124, 127[1] (1951), *cert. denied*, 342 U.S. 868, 72 S.Ct. 109, 96 L.Ed. 653 (1951), can be an appellant eleven years after the forfeiture. However Plaintiffs have not challenged SBC's presence as a named appellant. Inasmuch as Rick and Judy, as statutory trustees of SBC, § 351.526, RSMo Supp.1995, may be sued as such, they have the right to appeal in that capacity. *Erb v. Johannes*, 684 S.W.2d 445, 447–48[4] (Mo.App. E.D.1984). Consequently, the phantom presence of SBC as an appellant does not impair the validity of the appeal.

opinion sets forth the facts and addresses the legal issues regarding each parcel separately.

Three of Defendants' claims of error pertain to a parcel referred to by the parties at trial and in their briefs as "Tract 1." This opinion begins with that parcel.

In 1971, Merle D. Snyder and Darlene Snyder, husband and wife, acquired ownership of all of Lots 15 and 16 in Garvin's Prosperity Acres, a Jasper County subdivision. Lots 15 and 16 appear on Appendix A at the end of this opinion and are identified by diagonal, parallel lines lying across them.

In 1980, Merle[4] and Darlene conveyed part of the land identified in the preceding paragraph to SBC. At trial and in the briefs, the parties refer to the parcel conveyed to SBC as "the Bunker." So shall this opinion. Although the Bunker is not one of the two parcels in dispute, it abuts one of them and, as shall become evident *infra,* is intertwined in the events that begot this suit. The Bunker appears on Appendix B at the end of this opinion and is identified by diagonal, parallel lines lying across it.

The legal description of the Bunker, as it appeared in the deed from Merle and Darlene to SBC, is set forth on Appendix C at the end of this opinion. It is the first of the two descriptions on Appendix C. The beginning point of the description is the southeast corner of section 9 in a designated township and range. As this court comprehends the evidence, that corner lies in the intersection of Prosperity Road (shown on Appendix B) and a road running perpendicular to it. The point where the perpendicular lines cross each other in the intersection appears to be the abutting corners of sections 9, 10, 15 and 16.

Upon receiving the deed to the Bunker from Merle and Darlene in 1980, SBC simultaneously executed a deed of trust on the Bunker to Commerce Bank of Joplin ("Commerce Bank"), securing a $225,000 note.

In 1983, Darlene conveyed another part of the land in Lots 15 and 16 to SBC.[5] That part is the parcel referred to as "Tract 1." It appears on Appendix D at the end of this opinion and is identified by diagonal, parallel lines lying across it.

The legal description of Tract 1, as it appeared in the 1983 deed from Darlene to SBC, is set forth on Appendix C at the end of this opinion. It is the second of the two descriptions on Appendix C.

Larry Carsten, chief appraiser for the Jasper County assessor, testified that each parcel of land in the county is assigned a "code number" by that office. The code number appears on tax statements for the parcel to which the number is assigned.

Carsten explained that if a landowner acquires a parcel of land adjoining a parcel he already owns, and if there are no liens on either parcel, the assessor's office will "eventually combine those together to one tax bill." The parcels, when combined, will be identified by only one code number. That is, said Carsten, "One number would be done away with."

If the landowner thereafter sells part of the combined tract but keeps the rest of it, a new code number will be assigned to the parcel sold. The new number will be a combination of the prior number plus a four-digit "tag number" such as "1000."

Sometime before 1987, the assessor assigned code number 18–155033–1000 to Tract 1; the assessor assigned code number 18–155034 to the Bunker.

On September 23, 1987, inasmuch as Tract 1 and the Bunker were both then owned by SBC and abutted each other, the assessor combined the parcels under code number 18–155034–0000.

The next year, 1988, Commerce Bank foreclosed its deed of trust on the Bunker. Although the record is sketchy, the parties agree in their briefs that Commerce Bank

---

**4.** For brevity and clarity, this opinion henceforth refers to Merle D. Snyder as "Merle," and to Darlene Snyder as "Darlene." No disrespect is intended.

**5.** The 1983 deed from Darlene to SBC recited that Darlene was the widow of Merle, who died earlier that year.

acquired ownership of the Bunker at foreclosure.[6]

Because SBC no longer owned the Bunker after the foreclosure, the assessor assigned the Bunker a new code number: 18–155034–1000. The assessor continued to carry Tract 1 under code number 18–155034–0000.

On August 11, 1990, the collector of Jasper County published a notice identifying certain tracts of land that would be sold because of unpaid taxes. The notice read, *inter alia:*

"GARVIN'S PROSPERITY ACRES ADDITION—BEG 283' N SW COR LOT 15 TH N 344.35' E 431.43' S 208.7' W 190.95' S 135.15' W TO BEG. YEARS: 1987–$1,822.41 GARVIN'S PROSPERITY ACRES ADDITION—PART LOTS 15 & 16 BEG SE COR SEC TH N 449.05' W 429.65' S 448.15' E 29.65' TO BEG EX RD R/W YEAR: 1987–$4,012.64 GARVIN'S PROSPERITY ACRES ADDITION—PART LOTS 15 & 16 BEG 283' N SW COR LOT 15 N 344.35' E 431.43' S 208.7' W 195' S 140' W TO POB EX RD (3.86 ACRES) (COMBINED IN 1988) YEARS: 1988–$668.29, 1989–$629.18, TOTAL–$7,132.52 SNYDER BROTHERS COMPANY, INC."

The notice ostensibly describes three parcels.

The first description in the notice corresponds with the description of Tract 1 on Appendix C, except the final distance in the description on Appendix C (240.48 feet) does not appear in the description in the notice. The notice shows taxes are due on the described parcel for one year (1987) in the sum of $1,822.41.

The second description in the notice corresponds with the description of the Bunker on Appendix C except the final distance in the description on Appendix C is 429.65 feet, while the final distance in the notice is 29.65 feet. The notice shows taxes are due on the described parcel for one year (1987) in the sum of $4,012.64.

The third description in the notice corresponds with the description of Tract 1 on

Appendix C until the description reaches the point where it turns west. On Appendix C, the description reads: "thence South 89 °13' West 190.95 feet"; on the notice, the description reads: "W 195'." The next segment of the description of Tract 1 on Appendix C reads: "thence South 135.15 feet"; on the notice, the description reads: "S 140'." The final distance in the description of Tract 1 on Appendix C is 240.48 feet. That distance does not appear in the description in the notice. The notice shows taxes are due on the described parcel for two years (1988 and 1989) in the respective amounts of $668.29 and $629.18.

The figure at the end of the notice ($7,132.52) is the total of all four amounts in the notice (one amount, $4,012.64, being attributable to the Bunker).

Neither the parcel described by the first description in the published notice nor the parcel described by the third description in the published notice was bought by anyone at the 1990 tax sale.

The following year, on August 10, 1991, the collector of Jasper County published a notice identifying certain tracts of land that would be sold because of unpaid taxes. The notice read, *inter alia:*

"GARVIN'S PROSPERITY ACRES— BEG 283' N SW COR LOT 15 TH N 344.35' E 431.43' S 208.7' W 190.95' (CON'T) YEARS: 1987–$2,037.05. TOTAL–$2,037.05 SNYDER BROTHERS CO. INC.

GARVIN'S PROSPERITY ACRES— PART LOTS 15 & 16 BEG 283' N SW COR LOT 15 N 344.35' E 431.43' S 208.7' 2.25 ACRES YEARS: 1987–$848.89, 1988–$756.84, 1989–$725.27, 1990–$627.68. TOTAL $9,958.68. SNYDER BROTHERS CO. INC."

Neither of the two descriptions above is complete, i.e., neither contains enough calls to return to the point of beginning. Asked about that at trial, the collector testified: "I honestly don't know. I'd say maybe the records had changed on the computer."

---

**6.** Where a statement of fact in one party's brief is conceded to be true in the adversary's brief, an appellate court may consider it as though it ap-

pears in the record. *State ex rel. Missouri Highway and Transportation Commission v. Sweeney,* 933 S.W.2d 908, 910[1] (Mo.App. S.D.1996).

The collector acknowledged that at the 1991 sale, the land described in the above excerpt from the notice "was offered as two separate pieces [of property]." That is confirmed by the notice itself. The first described parcel is shown as having unpaid taxes for 1987 in the sum of $2,037.05. The second described parcel is also shown as having unpaid taxes for 1987, the amount being $848.89. Additionally, the second described parcel is shown as having unpaid taxes for 1988, 1989 and 1990. The total due on the second described parcel is shown as $9,958.68. The total is evidently erroneous, and apparently should have been $2,958.68.

An attentive reader will have noticed: (a) the description of the third described parcel in the 1990 notice corresponds with the description of the second described parcel in the 1991 notice, up to the point where the incomplete description in the 1991 notice ends, and (b) the third described parcel in the 1990 notice was shown as having no unpaid taxes for 1987, but the second described parcel in the 1991 notice was shown as having $848.89 unpaid taxes for 1987. Therefore, there appears to be a conflict between the 1990 and 1991 notices as to whether there are 1987 taxes owed on what appears to be the same parcel of land.

Plaintiffs' mother, Mary, attended the 1991 tax sale; it occurred August 26, 1991. She paid $2,037.05 for a parcel identified by the collector in a "Tax Sale Certificate of Purchase" as number 18–155033–1000 (the code number assigned by the assessor to Tract 1 prior to 1987). The certificate of purchase described the parcel as:

"GARVIN'S PROSPERITY ACRES— BEG 283' N SW COR LOT 15 TH N 344.35' E 431.43' S 208.7' W 190.95' (CONT)"

The description on the certificate, although incomplete, corresponds with the description of Tract 1 on Appendix C up to the point where the description on the certificate ends. The certificate shows the $2,037.05 paid by Mary was for unpaid taxes for 1987 alone.

Mary made another purchase at the 1991 tax sale. She paid $2,958.68 for a parcel identified by the collector in another certificate of purchase as number 18–155034. That number is identical to the first eight digits of the code number under which the assessor had continued to carry Tract 1 after the assessor separated Tract 1 from the Bunker following the 1988 foreclosure on the Bunker by Commerce Bank. The certificate of purchase described the parcel as:

"GARVIN'S PROSPERITY ACRES— PART LOTS 15 & 16 BEG 283' N SW COR LOT 15 N 344.35' E 431.43' S 208.7' "

The description on the certificate, although incomplete, corresponds with the description of Tract 1 on Appendix C up to the point where the description on the certificate ends. The certificate shows the $2,958.68 paid by Mary was for unpaid taxes for 1987, 1988, 1989 and 1990.

Kevin testified that after Mary died,[7] he went through the files "trying to determine the different legal descriptions in each file." According to Kevin, "[I]t became apparent that one property was sold twice at the tax sale and purchased both times by my mother." We infer Kevin was referring to the fact that the incomplete legal description in the certificate of purchase for parcel 18–155033–1000 and the incomplete legal description in the certificate of purchase for parcel 18–155034 appear to identify the same parcel. As we have seen, the incomplete descriptions on the certificates are identical to each other, so far as each goes (the description for parcel 18–155033–1000 going farther than the description for parcel 18–155034).

Kevin recounted he contacted the collector, who referred him to a county commissioner. Kevin asked the commissioner "to look into it and see if [I] could obtain a refund of moneys that were overpaid at the tax sale."

On January 18, 1994, the Jasper County Commission entered an order providing, *inter alia:*

"It is hereby ordered ... that the Jasper County Treasurer ... write a check from the General Revenue Fund payable to the

7. Footnote 2, *supra.*

Mary Maynard [sic] Estate in the amount of $2,037.05.

This is for an invalid sale of land at the 1991 Tax Sale.

Said parcel described as follows:

Code 18–155033–1000

Garvins Prosperity Acres—Beg 283' N SW Cor Lot 15 Th N 344.35' E 431.43' S 208.7' W 190.95' E 431.43' S 208.7' W 190.95' COP C–18–91[8]

1987 Taxes due $2,037.05

Sold for $2,037.05 to Mary Maynard [sic] Estate

Owner listed at time of Sale Snyder Brothers Co., Inc."

The description in the above order is obviously incorrect, as it repeats three courses and distances (E 431.43' S 208.7' W 190.95') and does not close; that is, by following the courses and distances from the point of beginning, one does not return there.

On April 25, 1994, the collector signed a "Collector's Deed for Taxes," conveying to Kevin and Janet (Plaintiffs herein) a parcel of land described as:

"Part of Lots Fifteen (15) and Sixteen (16) Beginning Two Hundred Eighty Three Feet (283') North (N) Southwest (SW) Corner Lot Fifteen (15) North (N) Three Hundred Forty Four and Thirty Five Hundredths Feet (344.35') East (E) Four Hundred Thirty One and Forty Three Hundredths Feet (431.43') South (S) Two Hundred Eight and Seven Tenths Feet (208.7') West (W) One Hundred Ninety Five Feet (195') South (S) One Hundred Forty Feet (140') West (W) to Point of Beginning Except Road in Garvin's Prosperity Acres. . . ."

The above description corresponds with the description of Tract 1 on Appendix C until the description reaches the point where it turns west. On Exhibit C, the description reads: "thence South 89 °13' West 190.95 feet"; on the collector's deed, the description reads: "West (W) One Hundred Ninety Five Feet (195')." The next segment of the description of Tract 1 on Appendix C reads:

"thence South 135.15 feet"; on the collector's deed, the description reads: "South (S) One Hundred Forty Feet (140')." The final distance in the description of Tract 1 on Appendix C is 240.48 feet. That distance does not appear in the description on the collector's deed.

The collector's deed identified the parcel described in it as "Code Number 18–155034–0000." As explained earlier, that is the number under which the assessor carried Tract 1 after the assessor separated Tract 1 from the Bunker following the 1988 foreclosure on the Bunker by Commerce Bank.

A surveyor prepared a drawing showing the parcel described as Tract 1 on Appendix C and also showing the parcel described in the collector's deed. The first three sides in each description (the west, north and east) coincide. When the description turns west (at the south end of the easternmost east side—each description has two east sides), the descriptions cease to match. The west-to-east distance in Tract 1 on Appendix C is 190.95 feet; the west-to-east distance in the collector's deed is 195 feet. Then, both descriptions turn south. The north-to-south distance in Tract 1 on Appendix C is 135.15 feet; the north-to-south distance in the collector's deed is 140 feet. At the south end of the north-to-south line in both descriptions, both descriptions go west to the point of beginning.

The result is that (a) the description of Tract 1 in Appendix C includes a narrow strip of land (the long axis of which runs north-to-south) which is excluded by the description in the collector's deed, and (b) the description in the collector's deed includes a narrow strip of land (the long axis of which runs west-to-east) which is excluded by the description of Tract 1 in Appendix C.

Plaintiffs' petition prayed the trial court to quiet title in them to Tract 1 in Appendix C, not to quiet title in them to the parcel described in the collector's deed. As noted early in this opinion, the description of Tract 1 in Appendix C is the description in the 1983 deed from Darlene to SBC.

8. We infer this line identifies the number on the certificate of purchase issued Mary for parcel 18– 155033–1000. The number "C–18–91" appears in the upper right-hand corner of the certificate.

The trial court found Plaintiffs acquired title to Tract 1 by virtue of the collector's deed, even though—as explained above—the two descriptions do not coincide, each including a strip excluded by the other. In regard to that discrepancy, the trial court found:

"While the Collector's Deed ... does have a slight deviation from the correct legal description, it described the property with reasonable certainty as required by Section 140.530.[9] ... The tract is further referenced by both its Assessor's Code Number and Map Number."[10]

Defendants' first point relied on is:

"The trial court erred in not setting aside and voiding the collector's deed ... conveying the real estate described in Tract [1], because the county commissioners ... had voided the 1991 tax sale, with the correct legal describing Tract [1], in their order dated January 18, 1994, and had declared the sale invalid."

The validity of the collector's deed was placed in issue by Defendants' second amended answer. It averred, *inter alia*, that the "sale" was void because the county commission found the sale "invalid" with respect to Tract 1 on January 18, 1994, prior to the execution of the collector's deed. Therefore, pled Defendants, "said collector's deed is unenforceable."

In support of their first point, Defendants emphasize that the collector admitted that the certificate of purchase for the parcel identified by code number 18–155033–1000 (the code number in the county commission's order of January 18, 1994) "matched up" with an "assessment sheet" reflecting an "assessed value" of $30,540 for that parcel. It will be remembered that code number 18–155033–1000 was the one by which the assessor had identified Tract 1 (as described in Appendix C) before September 23, 1987. Carsten testified the assessor's records "at

that time" showed parcel 18–155033–1000 had an assessed value of $30,540. According to the certificate of purchase, the $2,037.05 paid by Mary for parcel 18–155033–1000 represented 1987 taxes on a valuation of $30,540.

Consequently, assert Defendants: "It is clear from the records of the County Commission and the Collector that the sale of land which contained the correct legal description and the correct tax owed was voided."

Plaintiffs respond by pointing out that Defendants admit no taxes had been paid on Tract 1 for 1987 prior to the 1991 tax sale.[11]

Plaintiffs emphasize that in the other certificate of purchase issued Mary (the one for parcel 18–155034), the assessed value was shown as $12,690 and the amount Mary paid ($2,958.68) was for four years of unpaid taxes. One of those years was 1987. The tax for that year ($848.89) was based on a valuation of $12,690.

As reported earlier, the published notice for the 1991 tax sale ostensibly listed two tracts. The second tract was shown to have four years of unpaid taxes (1987 to 1990 inclusive). The 1987 taxes were shown as $848.89. However, as Defendants aptly warn: "The Court must keep in mind there is only one piece of property, even though the Collector believed he was selling two pieces of property."

Plaintiffs maintain the $2,037.05 paid by Mary for parcel 18–155033–1000 was an overpayment of the 1987 taxes, as taxes of $848.89 were owed for 1987 on the same parcel under code number 18–155034. As explained earlier, after the assessor separated Tract 1 from the Bunker following the 1988 foreclosure on the Bunker by Commerce Bank, the assessor carried Tract 1 under code number 18–155034–0000.

---

**9.** Section 140.530, RSMo 1994, reads, *inter alia:* "No sale or conveyance of land for taxes shall be valid if ... the taxes thereon shall have been paid before sale, or if the description is so imperfect as to fail to describe the land ... with reasonable certainty...."

**10.** Carsten, the assessor's chief appraiser, testified land is identified by not only code number,

but also by "map number" on a "county tax map." The collector's deed bears a map number.

**11.** Defendants' brief candidly concedes: "It is clear and undisputed that the taxes had not been paid before the sale."

Accordingly, say Plaintiffs, the county commission's order of January 18, 1994, "was simply a mechanism for refunding an overpayment of property taxes by [Mary]." Plaintiffs point out that the order did not void the sale of parcel 18–155034, for which Mary paid $2,958.68 ($848.89 of which represented the 1987 taxes).

The baffling evidence about the identification, assessment and taxation of Tract 1 from 1987 to 1990 defies rational explanation.[12] However, the county commission apparently concluded that the amount of tax owed for 1987 was $848.89 (part of the total taxes of $2,958.68 shown on the certificate of purchase issued Mary for parcel 18–155034), not $2,037.05 (the tax shown on the certificate of purchase issued Mary for parcel 18–155033–1000).

■ Defendants concede: "There can only be one sale of one piece of property for unpaid taxes." This court agrees. Obviously, the county commission also embraced that belief, as it undertook to cancel one—but only one—of the two sales of the same tract and to refund one—but not both—of the amounts paid by Mary for the same tract.

If the county commission erred in concluding that the 1987 taxes were $848.89 instead of $2,037.05, Defendants are not harmed, as SBC paid nothing toward the 1987 taxes before its charter was forfeited and its statutory trustees paid nothing toward the 1987 taxes thereafter.

It is unnecessary to decide, hence this court does not decide, whether the county commission's order of January 18, 1994, was the correct method to refund the $2,037.05 Mary paid for parcel 18–155033–1000. It is likewise unnecessary to speculate about what effect, if any, the order had, given the incomplete legal description in it.

The only aspect of the order pertinent to this appeal is that it did not purport to invalidate the sale of parcel 18–155034 for taxes owed from 1987 through 1990. Mary bought the parcel for the amount of those taxes ($2,958.68), and the collector's deed was based on that purchase. The hypothesis of Defendants' first point, i.e., that the county commission's order "voided the 1991 tax sale," is without merit.

Defendants' second point is:

"The trial court erred in not setting aside and voiding the collector's deed ... conveying the real estate described in Tract [1], because the real estate was not liable for taxation assessed in 1987 through 1990, in that the real estate described in Tract [1] was double taxed in 1987 and erroneously taxed from 1987 through 1990, which caused the sale and subsequent collector's deed ... to be invalid under section 140.530, RSMo 1994, that the subsequent conveyance of the collector's deed was prohibited by section 140.540(1)."

Defendants presented records from the collector's office showing that under code number 18–155033–1000, Tract 1 was assigned an assessed value of $30,540 and taxed in the sum of $2,037.05 for 1987. Defendants presented other records from the collector's office showing that under code number 18–155034 (and under "the incorrect legal description," according to Defendants), Tract 1 was assigned an assessed value of $12,690 and taxed in the sum of $848.89 for 1987.

Additionally, Defendants refer us to a segment of Carsten's testimony not yet mentioned in this opinion. Carsten avowed the assessed value shown on the certificate of purchase for parcel 18–155034 ($12,690) does not appear on the assessor's records. According to Carsten, the tax statement "being sent today" for the parcel is based on an assessed value of $9,120.

Seizing upon that testimony, Defendants argue: "It is clear that with respect to 1987, not only has Tract 1 been 'double assessed' but excessively assessed for the years 1987 through 1990." Consequently, according to Defendants, the collector "knew that the collection of tax for the year 1987 was excessive and incorrect." Therefore, reason Defendants, the collector was barred by § 140.540,

---

**12.** Another irregularity, not yet mentioned, is revealed *infra* in our discussion of Defendants'

second point.

RSMo 1994, from conveying the tract to Plaintiffs, hence the collector's deed was invalid.

■ Defendants cite no case to support their theory that an incorrect assessment on a tract of land automatically invalidates a subsequent sale of the tract for unpaid taxes based on the incorrect assessment.

Plaintiffs point out that SBC (and presumably its statutory trustees after its demise) could have appealed the assessment for 1987 and subsequent years to the county board of equalization per § 137.275, RSMo 1986, thence to the State Tax Commission per § 138.430, RSMo 1986. Furthermore, § 137.270, RSMo 1986, provided a specific administrative remedy for an owner of land "erroneously assessed twice for the same year." It is readily inferable from the record that neither SBC nor its statutory trustees pursued any of those remedies.

A holding by this court that an erroneous assessment of Tract 1 invalidated the tax sale would be repugnant to the principle that where an adequate administrative remedy exists to challenge valuation, that remedy must be exhausted before resorting to the judiciary. *See: Local Union No. 124, International Brotherhood of Electrical Workers v. Pendergast*, 891 S.W.2d 417, 418–19[3] (Mo. banc 1995). This court declines to contravene that principle. Defendants' second point is denied.

Defendants' third point is:

"The trial court erred in not setting aside and voiding the collector's deed ... conveying the real estate described in Tract [1], because the legal description of Tract 1 in the published notice of 1991, did not comply with section 140.030, RSMo 1994, in that said notice was not a full and correct description of Tract [1], that said description was so imperfect as to fail to describe the land in Tract 1 with reasonable certainty."

Section 140.030, cited in the above point, does not pertain to the publication of notice of sale of land for delinquent taxes. The statute pertinent to that subject is § 140.170. The version of that statute in effect at the time of the 1991 publication of notice was the version in RSMo 1986. Subsection 2 of that statute read, in pertinent part:

"In addition to the names of all record owners ... it is only necessary in the printed and published list to state in the aggregate the amount of taxes, penalty, interest and cost due thereon, each year separately stated, and the land therein described shall be described in forty acre tracts or other legal subdivisions, and the lots shall be described by number, block, addition, etc. ... "

The pertinent segment of the published notice for the 1991 sale—the 1991 notice is the only one attacked in Defendants' third point—is set forth earlier in this opinion. Although the notice ostensibly describes two parcels, all parties agree there was only one.

Neither description in the notice is complete. However, the courses and distances in each description are identical so far as each goes. The first description contains one more course and distance than the second description. The second description identifies the parcel as part of Lots 15 and 16. Both descriptions state the parcel is in Garvin's Prosperity Acres. Each description, so far as it goes, corresponds to the description of Tract 1 in Appendix C.

Defendants cite *Costello v. City of St. Louis*, 262 S.W.2d 591 (Mo.1953), overruled on other grounds, *Powell v. County of St. Louis*, 559 S.W.2d 189, 196 (Mo. banc 1977). *Costello* discusses the effect of § 140.170 and § 140.530. The pertinent provisions of those statutes, as set forth in the Supreme Court's opinion, *id.* at 594, are the same as the pertinent provisions of those statutes set forth in the instant opinion (§ 140.170.2 is quoted in part above; § 140.530 is quoted in part in footnote 9, *supra* ). The Supreme Court stated the statutes require "that there be a full description by correct lot number, block and addition, and all with reasonable certainty." *Id.* at 594–95[2]. The Supreme Court added: "The description must be accurate, correct and definite even though abbreviations are authorized." *Id.* at 595.

This court has studied *Costello* and the other three cases cited by Defendants in support of their third point. One of the

other three does not address the sufficiency of the published notice of a tax sale; it addresses only the sufficiency of the legal description in the collector's deed. Consequently, it is inapposite.

The remaining two cases, *Acton Enterprises, Inc. v. Stottle*, 646 S.W.2d 149 (Mo.App. S.D.1983), and *McCready v. Southard*, 671 S.W.2d 385 (Mo.App. S.D.1984), like *Costello*, address the sufficiency of the legal description in the published notice of a tax sale.

The legal description in each of those cases was fragmentary. In *Costello* it was: "City Block 2314; E–27, W–28." 262 S.W.2d at 593. In *Acton Enterprises* it was: "Pt. S½ S. frl.½ Tract 3, Section 30, Township 22, Range 20." 646 S.W.2d at 151. In *McCready* it was: "Patton Addition—S½ Lot 11 Also Lots 57 & 58 in 3–27–33." 671 S.W.2d at 387. Each description was held deficient.

■ In the instant case, the published notice for the 1991 sale (which ostensibly described two parcels, although there was but one) set forth: (a) the subdivision where the parcel lay, (b) the beginning point of the description, (c) four courses and distances in the first description; three courses and distances in the second description, (d) the lot numbers of the two lots wherein the parcel lay, and (e) the owner, SBC. Arguably, that is sufficient to satisfy the "reasonable certainty" requirement of *Costello*.

However, there is a more compelling reason to deny Defendants' third point.

Rick testified that when he was president of SBC, SBC conducted its business in an office building on the Bunker. After SBC ceased business in 1987, Rick and Judy moved to Kansas.

Shown the published notice of the 1991 tax sale, Rick, with praiseworthy candor, admitted that had he seen it he would have known the collector was preparing to sell land owned by SBC in Garvin's Prosperity Acres. It is obvious from Appendix D that the beginning point and the courses and distances in the notice pertained to no parcel of land in Lots 15 and 16 except Tract 1.

That being so, it would be a quintessential exaltation of form over substance to invalidate the sale on the ground that the legal description in the 1991 published notice was deficient. Defendants' third point is denied.

Defendants' final point pertains to another parcel of land formerly owned by SBC and bought by Mary at a tax sale. In their briefs, the parties refer to the parcel as "Tract 2." So shall we.

The collector offered Tract 2 for sale August 27, 1990, because SBC had failed to pay taxes on it. Mary bought Tract 2 at that sale. The collector issued Mary a certificate of purchase.

On August 23, 1994, some twenty months after Mary's death, Kevin took the certificate to the collector's office to get a deed.

Kevin testified he received no deed from the collector that day. Instead, according to Kevin, he was told he "had to pay the recording fees to the collector and the collector would issue the deed and see that the deed was recorded." Kevin paid the fees and departed.

The collector testified Kevin indeed appeared August 23, 1994, to get the deed. According to the collector, "[W]e issued the collector's deed that day." However, the collector explained that his practice was to take collector's deeds to the recorder "as a courtesy."

Kevin ultimately received a collector's deed to Tract 2 after it was recorded. The deed recited it was "made" August 23, 1994 (the day Kevin asked for it). However, the acknowledgment by the collector was dated September 7, 1994, and the deed showed it was filed for record with the recorder that date. Asked about the delay, the collector testified, "Well, that was right around our tax sale, and right at that time the tax sale was more important."

Defendants' final point is:

"The court erred in not setting aside and voiding the collector's deed, executed on September 7, 1994, and recorded September 7, 1994, conveying ... Tract [2], because the collector's deed was recorded more than four years after the sale of Tract [2] on August 27, 1990, therefore the collector's deed ... was invalid and void

under section 140.410, RSMo 1994,[13] which requires a deed to be executed and placed on record in the proper county within four years from the date of said sale."

*Bullock v. Peoples Bank of Holcomb*, 351 Mo. 587, 173 S.W.2d 753, 760[13] (1943), cited by Defendants, held that where a collector's deed was not recorded within four years after the tax sale, the purchaser's "title rights thereunder expired." ' That holding was followed in *Shaw v. Armstrong*, 361 Mo. 648, 235 S.W.2d 851, 858[9] (1951), overruled on other grounds, *Journey v. Miler*, 363 Mo. 163, 165, 250 S.W.2d 164, 165–66 (banc 1952). *Shaw* held a collector's deed executed more than four years after the sale was "void."

However, *Hobson v. Elmer*, 349 Mo. 1131, 163 S.W.2d 1020 (1942), cited by Plaintiffs, reached a different result. There, within four years after a tax sale, a tax sale purchaser sent his agent to the collector's office with the certificate of purchase, and on other occasions went there himself seeking a collector's deed. 163 S.W.2d at 1021–22. On some occasions the collector was gone and his deputy professed ignorance of the matter. *Id.* On at least one occasion the collector said he was "too busy to take care of the matter, and to come back again." *Id.* at 1022. The delinquent taxpayer ultimately redeemed the land, hence the collector issued no deed to the purchaser. *Id.* The Supreme Court held:

"[I]f a certificate holder has actually tendered to the collector his certificates, together with the amounts due thereunder, his right to a deed cannot be defeated simply because the collector has refused or failed to execute and deliver the deed. . . .

... we ... hold that [the tax sale purchaser] was prevented from receiving his deed by the acts of the collector and that he had done everything in his power to comply with the statutory requirements before the attempted redemption was made."

*Id.* at 1023–24. The Supreme Court reversed a judgment adverse to the tax sale purchaser and remanded the case, directing the trial court to permit the tax sale purchaser to tender into court the amounts due in order to secure a collector's deed and to order the collector, upon payment thereof, to execute a deed to the tax sale purchaser. *Id.* at 1024.

■ Here, Kevin presented the certificate of purchase to the collector four days before the four-year deadline and, so far as the record shows, was entitled to a collector's deed at that instant. Defendants do not argue otherwise.

The collector evidently recognized the significance of the date, as the deed he signed recited it was "made" August 23, 1994 (the day Kevin presented the certificate). However, the collector did not acknowledge and record the deed until September 7, 1994, fifteen days later. By then, the four-year deadline had passed.

Consistent with *Hobson*, this court holds Plaintiffs' right to a timely collector's deed could not be abrogated by the whim, languor or ineptitude of the collector. Defendants' premise that the collector's deed was "invalid and void" because it was not recorded within four years after the sale is meritless.

Judgment affirmed.

GARRISON, P.J., and PREWITT, J., concur.

13. Section 140.410, RSMo 1994, reads:
   "In all cases where lands have been ... sold for delinquent taxes ... and a certificate of purchase has been ... issued it is hereby made the duty of such purchaser, his heirs or assigns, to cause a deed to be executed and placed on record in the proper county within four years from the date of said sale; provided, that on failure of said purchaser, his heirs or assigns so to do, then and in that case the amount due such purchaser shall cease to be a lien on said lands so purchased as herein provided."

APPENDIX A

APPENDIX B

PROSPERITY ROAD

APPENDIX C

The Bunker

Beginning at the SE Corner of Sec. 9 T–27–N, R–32–W, Jasper County, Missouri, thence North 449.05 ft., thence S 89° 13' W 429.65 ft., thence South 448.15 ft. thence N 89° 24' E 429.65 ft., to the point of beginning. Except any and all parts taken for roadway purposes.

\* \* \*

Tract 1

Commencing at the Southwest Corner of Lot 15 in Garvin's Prosperity Acres Sub–Division

**500**

located in the South Half (S½), Southeast Quarter (SE¼) and the Southeast Quarter (SE¼), Southwest Quarter (SW¼) of Section 9, Township 27, Range 32, Jasper County, Missouri; thence North 283.0 feet to the point of beginning; thence North 344.35 feet to the Northwest (NW) Corner of said Lot 15, thence North 89 °13' East (E) 431.43 feet; thence South (S) 208.7 feet, thence South 89 ° 13' West 190.95 feet; thence South 135.15 feet, thence South 89 °13' West 240.48 feet, to the point of beginning. Being a part of Lots 15 and 16 in Garvin's Prosperity Acres, Jasper County, Missouri.

APPENDIX D